STATE EX REL. REUSS, Plaintiff, vs. GIESSEL, Director of Budget and Accounts, Defendant.

*December 7, 1951—February 5, 1952.*

For the plaintiff there was a brief by *Henry S. Reuss, in pro. per.*, of Milwaukee, attorney, and *Walter D. Corrigan, Sr.*, of Milwaukee, *Gerald F. Clifford* of Green Bay, and *William B. Rubin* of Milwaukee of counsel, and oral argument by *Mr. Reuss*.

For the defendant there was a brief by the *Attorney General* and *Warren H. Resh,* assistant attorney general, and oral argument by *Mr. Resh.*

MARTIN, J.  Sec. 26, art. IV, Wisconsin constitution, reads:

"The legislature shall never grant any extra conpensation to any public officer, agent, servant, or contractor, after the services shall have been rendered or the contract entered into; nor shall the compensation of any public officer be increased or diminished during his term of office."

The act involved must be presumed valid unless its repugnance to this section of the constitution is clear and irreconcilable.  This court may not judge the wisdom of the policy sought to be implemented by the enactment.

"And it is equally clear that if the legislative policy be to curb unrestrained and harmful competition by measures which are not arbitrary or discriminatory it does not lie with the courts to determine that the rule is unwise.  With the wisdom of the policy adopted, with the adequacy or practicability of the law enacted to forward it, the courts are both incompetent and unauthorized to deal.  The course of decision in this court exhibits a firm adherence to these principles.  Times without number we have said that the legislature is primarily the judge of the necessity of such an enactment, that every possible presumption is in favor of its validity, and that though the court may hold views inconsistent with the wisdom of the law, it may not be annulled unless palpably in excess of legislative power."  *Nebbia v. New York* (1934), 291 U. S. 502, 537, 54 Sup. Ct. 505, 78 L. Ed. 940.

This rule is so firmly established that we deem it unnecessary to cite from the numerous authorities in Wisconsin.

The constitutional prohibition of sec. 26, art. IV, against increasing the compensation of a public officer during his term is plain.  The question here is whether the provisions

of ch. 97, Laws of 1951, referred to below, violate that prohibition. An examination of the act shows that:

Sec. 4 amended sec. 15.02 (1), Stats., to provide that the term of office of the incumbent director of budget and accounts shall expire on May 1, 1951, and thereupon an appointment shall be made of a successor director for a term ending June 30, 1955. Sec. 29 amended sec. 20.72 (1) by changing the annual salary of said director from $9,000 to $10,500.

Sec. 5 amended sec. 15.21 (1), Stats., to provide that the term of office of the incumbent state auditor shall expire on May 1, 1951, and thereupon an appointment shall be made of a successor for a term ending June 30, 1955; and to change the annual salary of said auditor from $9,000 to $10,500.

Sec. 35 amended sec. 84.01 (1), Stats., to provide that the term of office of each incumbent member of the state. highway commission shall expire on May 1, 1951, and thereupon appointment shall be made of three successor members for terms ending March 1, 1953, March 1, 1955, and March 1, 1957, respectively. Sec. 19 amended sec. 20.49 (1) (a) to change the annual salary of each appointed member of said commission from $8,500 to $9,500 and to provide an additional $500 annually for the chairman, said chairman having previously received the same salary as the other members.

Sec. 37 amended sec. 101.02, Stats., to provide that the term of office of each incumbent member of the industrial commission shall expire on May 1, 1951, and that thereupon appointment shall be made of three successor members for terms ending June 1, 1951, June 1, 1953, and June 1, 1955, respectively. Sec. 24 amended sec. 20.57 (1) to change the annual salary of the members of said commission from $8,500 to $9,000 and to provide a salary of $9,500 for the

chairman, which chairman had previously received the same salary as the other members.

Sec. 39 amended sec. 111.03, Stats., to provide that the term of office of each incumbent member of the Wisconsin employment relations board shall expire on May 1, 1951, and thereupon appointment shall be made of three successor members for terms ending May 12, 1953, May 12, 1955, and May 12, 1957, respectively. Sec. 25 amended sec. 20.58 to change the annual salary of the members of said board from $6,500 to $7,500, and to provide that the chairman shall receive an annual salary of $8,000, which chairman had previously received the same salary as the other members.

Sec. 42 amended sec. 189.01 (2), Stats., to provide that the term of office of the incumbent director of the department of securities shall expire on May 1, 1951, and that thereupon an appointment shall be made of a successor director for a term ending May 1, 1955, and to change the annual salary of said director from $7,500 to $8,500.

Sec. 43 amended sec. 195.01 (1), Stats., to provide that the term of office of each incumbent member of the public service commission shall expire on May 1, 1951, and that thereupon appointment shall be made of three successor commissioners for terms ending the first Monday of March, 1953, the first Monday of March, 1955, and the first Monday of March, 1957, respectively; and to provide for appointment of the chairman by the governor, whereas said chairman had previously been elected by the other two members. Sec. 20 amended sec. 20.51 (1) to change the annual salary of said members from $8,500 to $10,000, and fixed the annual salary of the chairman at $10,500, whereas the chairman had previously received the same salary as the other members.

There is no violation of the constitutional prohibition in these provisions. Nothing in the phraseology of the act effects an increase in the compensation of any public officer

during his term. The existing terms of the officers involved expired on the effective date of the act, May 1, 1951, and the offices thereupon became vacant. All such offices and their respective tenure had been created by the legislature; they can be changed or abolished entirely by the legislature. That "whatever is created by statute may be taken away by statute" is a well-settled principle of law. New terms were created and new appointments were provided for. The salaries were changed by the legislature before the new appointments were made.

Plaintiff relies upon *Kearney v. Board of State Auditors* (1915), 189 Mich. 666, 155 N. W. 510, where an act increasing the salaries of state tax commissioners was held to be a violation of the Michigan constitution providing that the salary of such public officers shall not be increased after election or appointment. After passage of the act in question the incumbent commissioners resigned and were immediately reappointed by the governor for the remainder of the original terms. The terms had not been abolished by the act and new terms were not provided for. The same lack of analogy to the situation here existed in *State v. Hudson County* (1882), 44 N. J. L. 388, *State ex rel. Troy v. Yelle* (1947), 27 Wash. (2d) 99, 176 Pac. (2d) 459, 170 A. L. R. 1425, *County Commissioners v. Monnett* (1933), 164 Md. 101, 164 Atl. 155, 86 A. L. R. 1258, and other cases cited by plaintiff.

The use of the term "public officer" rather than "public office" in sec. 26, art. IV, Const., suggests that it applies to the individual rather than the statutory term. We consider that *State ex rel. Bashford v. Frear* (1909), 138 Wis. 536, 556, 559, 120 N. W. 216, has settled that point. There Mr. Justice CASSODAY died after serving about eight years of a full ten-year term. Within that time the annual salary had been increased from $5,000 to $6,000. R. M. BASHFORD was appointed to fill the vacancy until the election and quali-

fication of a successor. The secretary of state issued warrants to BASHFORD for the required portion of the annual salary at the rate of $5,000 per year, whereas BASHFORD claimed the salary at the rate of $6,000. The court said that it had always been the practice for a justice appointed to fill a vacancy to receive an increase in salary where one had been provided for by the legislature subsequent to the commencement of the predecessor's term of office and that the newly appointed justice is considered as serving his own term of office. Precedents for such practice were discussed, and the court concluded:

"As to the particular incumbent's term of service, during its pendency, the legislature is under complete disability to change the salary incident in any manner or to any extent; but as to any period, within a whole term, filled by appointment or election, the legislature has power, before the commencement thereof, to fix the compensation, different from that incident to the office during the preceding period."

The concurring opinion of Mr. Justice TIMLIN in that case stated:

". . . I regard the provision as personal to the incumbent of the office. If he enters the office after the change of the salary has taken place he is entitled to that salary, and as to him it cannot be increased or diminished; but if the office is vacated by death or otherwise before the expiration of the term the succeeding incumbent takes the office with the salary fixed by the legislature for that office and in force at the time of the appointment or election of the succeeding incumbent, even though such appointment or election be for part of an unexpired term."

There is nothing in plaintiff's argument that attacks the statutes here involved. What he is asking this court to do is investigate the motives of the legislature in passing the act and the motives of the governor in making appointments under it, as shown by events occurring subsequent to its passage. This we cannot do. The impropriety of such ju-

dicial inquiry into the motives of the legislature is stated in 11 Am. Jur., Constitutional Law, p. 818, sec. 141, as follows:

"One of the doctrines definitely established in the law is that if a statute appears on its face to be constitutional and valid, the court cannot inquire into the motives of the legislature. Thus, the motives which impel the legislature or any component part or member of it to enact a law cannot be made a subject of judicial inquiry for the purpose of invalidating or preventing the full operation of the law, . . ."

In *Loomis v. Callahan* (1928), 196 Wis. 518, 524, 220 N. W. 816, it was said:

"It is of no legal consequence to say that the plan is a subterfuge and devised for the mere purpose of circumventing the constitution. That may be admitted without answering the question thus presented one way or the other. In order to condemn the transaction it must be found that it creates a state debt within the meaning of the constitution. Even though any plan which places needed buildings at the disposal of the state may be said to circumvent the constitution, it does not offend against the constitution unless the plan does give rise to a state debt within the meaning of the constitution."

In other words, the issue in all cases of this kind is not whether someone intended to violate the constitution, but whether the constitution was actually violated. See also *Building Height Cases* (1923), 181 Wis. 519, 195 N. W. 544; *Iverson v. Union Free High School Dist.* (1925), 186 Wis. 342, 202 N. W. 788; *Tilly v. Mitchell & Lewis Co.* (1904), 121 Wis. 1, 98 N. W. 969.

The dangers of judicial inquiry into legislative motives are pointed out by the supreme court of the United States in *McCray v. United States* (1904), 195 U. S. 27, 54, 24 Sup. Ct. 769, 49 L. Ed. 78:

"This [argument], when reduced to its last analysis, comes to this, that, because a particular department of the government may exert its lawful powers with the object or

motive of reaching an end not justified, therefore it becomes the duty of the judiciary to restrain the exercise of a lawful power wherever it seems to the judicial mind that such lawful power has been abused. But this reduces itself to the contention that, under our constitutional system, the abuse by one department of the government of its lawful powers is to be corrected by the abuse of its powers by another department.

"The proposition, if sustained, would destroy all distinction between the powers of the respective departments of the government, would put an end to that confidence and respect for each other which it was the purpose of the constitution to uphold, and would thus be full of danger to the permanence of our institutions."

It is our opinion that ch. 97, Laws of 1951, is a valid and constitutional enactment and does not in any way offend against the prohibition of sec. 26, art. IV of the constitution.

*By the Court.*—The demurrer is sustained and the complaint is dismissed.

CURRIE, J., took no part.