BURTON and others, Appellants, v. STATE APPEAL BOARD, Respondent.*

*February 1—February 27, 1968.*

* Motion for rehearing denied, without costs, on May 7, 1968.

For the appellants there was a brief by *Godfrey, Godfrey, Neshek & Conway* of Elkhorn, and oral argument by *Thomas G. Godfrey.*

For the respondent the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Max C. Ashwill,* legal consultant, department of public instruction.

HEFFERNAN, J.   Numerous issues were raised by the petitioners in the circuit court and were incorporated in their brief on this appeal.   During oral argument the appellants, although not conceding that other points briefed were wholly without merit, chose to rest their case on the single issue of whether the statute, sec. 117.03,[3] Stats., results in an unconstitutional delegation of legislative power.   Their position is premised upon art. X, sec. 1, of the Wisconsin Constitution, which provides in part:

[3] Ch. 92, Laws of 1967, revised and codified the statutes relating to public schools.   Sec. 40.13 (4), Stats., referred to in the briefs

"The supervision of public instruction shall be vested in a state superintendent and such other *officers* as the legislature shall direct; and their qualifications, powers, duties and compensation shall be prescribed by law." (Emphasis supplied.)

It is their contention that the members of the agency school committee are mere employees of the state and not officers, and, hence, the delegation of legislative power to them is unconstitutional.

The leading case in Wisconsin establishing criteria to determine whether one is a public officer or a mere employee is the case of *Martin v. Smith* (1941), 239 Wis. 314, 1 N. W. 2d 163. That case determined that the president of the university was an employee of the board of regents and was not a public officer. This court held that, although it was clear that the federal position of Director of Selective Service, to which the president had been appointed, was "an office of profit and trust under the United States," the presidency of the university was not an "office of trust, profit, or honor in this state," as contemplated by art. 13, sec. 3, of the constitution.

The court examined decisions from various jurisdictions and accepted the definition of public office set forth in *State ex rel. Barney v. Hawkins* (1927), 79 Mont. 506, 257 Pac. 411, 53 A. L. R. 583. The court stated that the

was renumbered by ch. 92, Laws of 1967, as sec. 117.03 (2) and as renumbered provides:

"Upon receipt of a notice of appeal filed under sub. (1), the state superintendent shall promptly appoint a state appeal board composed of the presidents of 4 agency school committees of agencies which have no territory included in the order under appeal. The state superintendent or his designated representative shall act as chairman, shall have the right to vote and shall furnish secretarial services. Each agency school committee president on a state appeal board shall receive $15 for each day spent in the performance of his duties, and shall be reimbursed 8 cents per mile traveled to and from meetings by the usual traveled route and for his actual and necessary expenses. Expense account vouchers shall be filed with the state superintendent and paid out of the appropriation under s. 20.650 (1) (a)."

Montana case was a "summary of the law upon the subject arrived at by an analysis and careful consideration of the authorities." The definition so accepted states:

" 'to constitute a position of public employment a public office of a civil nature, it must be created by the constitution or through legislative act; must possess a delegation of a portion of the sovereign power of government to be exercised for the benefit of the public; must have some permanency and continuity, and not be only temporary or occasional; and its powers and duties must be derived from legislative authority and be performed independently and without the control of a superior power, other than the law, except in case of inferior officers specifically placed under the control of a superior officer or body, and be entered upon by taking an oath and giving an official bond, and be held by virtue of a commission or other written authority.' " *Martin v. Smith, supra,* page 332.

Applying these criteria, it is apparent that, in conformance with the standards set forth above, the position of appeal board and its constituent membership is created by the statutes by the legislative delegation of the appointment power to the Superintendent of Public Instruction.

The annotation in 53 A. L. R. 595, 599, accompanying *State ex rel. Barney v. Hawkins, supra,* concludes that it is a matter of generally accepted law that:

". . . it is essential that the position shall be created by the Constitution or statutes of the sovereignty, or that the sovereign power shall have delegated to an inferior body the right to create the position in question."

Herein, it is undisputed that the delegation of power to the appeal board is by virtue of the statutes of the sovereignty.

A careful review of *Martin v. Smith* indicates that the principal consideration determining whether a position is an office and one holding it is an officer is the type of power that is wielded. The *Martin Case,* page 332, stated:

"It is certain that a person employed cannot be a public officer, however chosen, unless there is devolved upon him by law the exercise of some portion of the sovereign power of the state in the exercise of which the public has a concern."

The case of *State ex rel. Barney v. Hawkins* quoted above amplifies the nature of that sovereign power and sets forth:

" '. . . its powers and duties must be . . . performed independently and without the control of a superior power other than the law . . . .' "

An examination of the facts of the *Martin Case,* vis-a-vis those herein, leads to the inevitable conclusion that the State Appeal Board as constituted exercised the sovereign power of the state. In *Martin,* page 329, emphasis was placed upon the fact that the president of the university "is subject in all things to the Board of Regents." While the powers of the board of regents are broad and "subject to no limitations except such as are implied from the nature of the subject matter to which it applies," the powers conferred upon the university president may be withdrawn at will. The board of regents has a power of removal that in the case of *Martin v. Smith* is denominated as absolute; and the policy making authority of the university is primarily in the board of regents. The president's actions are subject to its discretion and its approval.

By contrast, within the appeal jurisdiction and the standards set by the legislature, the powers of the appeal board are plenary. Once appointed, the members of the board sit as equals in their appellate jurisdiction with the Superintendent of Public Instruction, who is, without a doubt, a public officer. Once constituted, they are not subordinate to any authority other than that of law, and their conduct may be reviewed only by the judiciary,

whose powers with respect thereto are circumscribed by constitutional principles and legislative enactments.

Another criterion to be considered in determining that a position is an office and not a mere employment as set forth in *State ex rel. Barney v. Hawkins, supra,* is that it " 'must have some permanency and continuity, and not be only temporary or occasional . . . .' " It is undeniably true that each individual member of the State Appeal Board appointed by the Superintendent of Public Instruction serves only for the purpose of disposing of or reviewing a particular order of an agency school committee. However, the *concept* of the State Appeal Board is not of a transient nature. It is clear from the plain meaning of the legislative enactment that the law contemplates a permanently available appeal board whose composition, although *ad hoc,* is for the purpose of filling a permanent need and is composed of members of agency school committees who have three-year terms as members of the committee and whose election as the president of the committee is for a one-year term. Secs. 116.51 and 116.52, Stats. The board is thus a permanent one, whose membership, however, may vary in accordance with the territorial implications of the order under review. The office that the State Appeal Board's members fill is a permanent one, although a particular individual may occupy it only in respect to a particular review. We see nothing repugnant to the constitution that the legislature has established a board of this nature designed primarily to secure an impartial membership, albeit on an *ad hoc* basis.

Still another generally accepted criterion in determining whether an employment is in fact an office is whether the officer is required to take an oath of office. Art. IV, sec. 28, requires that:

"Members of the legislature, and all officers, executive and judicial, except such inferior officers as may be by law exempted, shall before they enter upon the duties of

their respective offices, take and subscribe an oath or affirmation to support the constitution of the United States and the constitution of the state of Wisconsin, and faithfully to discharge the duties of their respective offices to the best of their ability."

*In re Nagler* (1927), 194 Wis. 437, 439, 440, 216 N. W. 493, states that:

"Public officers must take an oath as prescribed by sec. 28, art. IV, of the constitution unless exempted therefrom. No exemption appears in the act and no requirement to take an oath."

It is equally true in this case that the statute neither requires an oath nor exempts the members of the appeal board from taking an oath. A perusal of *In re Nagler,* however, reveals that the rationale of the decision is based not upon the absence of an oath or bond but rather upon the fact that the legislature had not seen fit to delegate to the office of conservation director the sovereign power of the state. The concluding paragraph of *In re Nagler,* pages 440, 441, points out:

"The act must be interpreted as a whole and not by taking single words here and there to determine its true meaning. In the present case the legislative intent to put the conservation director under the control and subject to the direction of the conservation commission . . . is so clear and obvious . . . ."

As in *Martin, supra,* the court is concerned not with the panoply of the ceremonials by which the position is assumed but rather the nature of the power that devolves upon the position by virtue of the legislative delegation.

In the case of *Sieb v. Racine* (1922), 176 Wis. 617, 624, 187 N. W. 989, the court, discussing the criterion of a definite term and the taking of the oath, pointed out, "While, possibly, these are not indispensable, they are the usual characteristics of an office." In that case also, in concluding that a school superintendent was not an

officer, the court stressed that one holding such a position exercising "none of the functions of sovereignty" was not an officer and emphasized that control over that position was vested in the board of education.

In the instant case, as discussed above, substantial powers of the sovereignty have been delegated to the appeal board by the legislature. Under these circumstances, we conclude that the members of the appeal board are officers of the state and may constitutionally discharge the duties that have been devolved upon them by the legislature. We conclude, however, that they are obligated to follow the mandates of art. IV, sec. 28, of the Wisconsin Constitution and they cannot be considered de jure officers in the absence of taking and filing an oath of office. It is equally clear, however, that the members of the appeal board were de facto officers. As we stated in *State ex rel. Reynolds v. Smith* (1964), 22 Wis. 2d 516, 522, 126 N. W. 2d 215:

". . . all that is required to make an officer *de facto* is that the individual claiming the office be in possession of it, performing its duties, and claiming to be such officer under color of an election or appointment."

In the case of *State ex rel. Schneider v. Darby* (1922), 179 Wis. 147, 190 N. W. 994, it was specifically held that a municipal officer acting under the color of a known and legal election was, though he failed to file the required oath, a de facto officer. While the right to hold an office when tenure is based only on a de facto status may be attacked directly, the officer's acts are valid as to the public, and third parties and cannot be attacked collaterally.[4] *Cole v. The President and Trustees of the*

[4] The State Superintendent of Public Instruction appoints members of the State Appeal Board in his capacity as superintendent and not chairman of the State Appeal Board. There is no dispute that, in his capacity as State Superintendent, he is a de jure officer. Whether a de facto officer can appoint other de facto officers is not before the court.

*Village of Black River Falls* (1883), 57 Wis. 110, 113, 114, 14 N. W. 906. We stated therein that:

"If the offices exist *de jure,* then it is the settled doctrine of this court as well as of other courts that all persons who are in the exercise of the duties of such offices by color of law are officers *de facto,* and their acts are valid."

We thus conclude that the members of the State Appeal Board have been vested by the legislature with the power to exercise a portion of the sovereign power of the state and that, as the holders of such power which may be exercised by them without the control of a superior power other than the law itself, they are officers.

Since there are no issues of fact which have been raised by the affidavits of either the plaintiffs or the defendants, only a question of law is presented, and that question of law we resolve in favor of the position of the respondent.

The circuit judge properly granted summary judgment to the respondent.

*By the Court.*—Judgment affirmed.