MOSES, State ex rel. Moses, Petitioner-Appellant, v. BOARD OF VETERANS AFFAIRS, and another, Respondents.

*No. 77–027. Argued September 14, 1977.—*
*Decided November 1, 1977.*
(Also reported in 259 N. W. 2d 102.)

For the appellant there were briefs by *Jack R. DeWitt, Robert D. Sundby, Jon P. Axelrod* and *DeWitt, McAndrews & Porter, S. C.* and oral argument by *Jack R. DeWitt,* all of Madison.

For the respondents the cause was argued by *David T. Flanagan,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

ROBERT W. HANSEN, J.   Most of the issues raised on this appeal deal with the manner of removal of the petitioner by the board of veterans affairs. But, before we can get to the HOW of the removal, we must first determine WHO had the right to remove him from the secretaryship. Certainly, in this case, although not in the dictionary, WHO comes before HOW. The threshold question is who had the statutory right and authority to remove the petitioner as secretary of veterans affairs.

In this state the right to remove legislative or appointive state officers is given by statute to the person or body that made the appointment of such officer. This is codified in a removal statute[1] creating certain categories of officers. These categories relate the right to remove an officer with the person or body that made the appointment.[2]   One such category is "state officers appointed by the governor by and with the advice and consent of the senate, or appointed by any other officer or body, subject to the concurrence of the governor." State officers in this category can be removed from office only "by the governor at any time, for cause."[3] Another category is "[o]ther state officers appointed by any officer or body without the concurrence of the governor." State officers in this category can be removed from office "by the officer or body that appointed them, at pleasure."[4]   If the petitioner is in the first category, he can be removed only by the governor for cause. But

---

[1] Sec. 17.07, Stats., entitled *Removals; legislative and appointive state officers.*

[2] Sec. 17.07 (1), (2), (3), (4) and (5), Stats.

[3] Sec. 17.07 (3), Stats.

[4] Sec. 17.07 (5), Stats.

if the second applies, he is removable by the board, at its pleasure.

Moses' appointment as secretary of veterans affairs was made by the governor and confirmed by the senate. It is conceded that prior to the 1977 amendment to sec. 15.05 (1) (b) Moses could be removed only by the governor for cause.[5] His removal for cause by the governor could be accomplished only in compliance with sec. 17.16, Stats., requiring written and verified charges preferred by a taxpayer, a public hearing and a "full opportunity to be heard in his defense, personally and by counsel."[6] The governor having made the appointment, only the governor could remove his appointee, and he could do so only for cause and after a hearing.

The claim of the board that it had the right to remove from office without cause and without a hearing one who had been appointed by the governor and confirmed by the senate is based on the amendment to sec. 15.05 (1) (b), the appointment statute, which took away the exceptional status of the appointment of a secretary of veterans affairs.[7] The change is illustrated by the language below stricken.

". . . If a department is under the direction and supervision of a board, the board shall appoint a secretary to serve at the pleasure of the board, ~~except that the secretary of veterans affairs shall be appointed by the governor with the advice and consent of the senate for an indefinite term,~~ outside the classified service."

This amendment, a mere deletion of an exception, changed the manner of appointment of a secretary of veterans affairs. What the deletion in the appointment statute did not change was the fact that John R. Moses was the secretary of veterans affairs by virtue of an

---

[5] Respondents' Brief at 8.
[6] Sec. 17.16 (3), Stats.
[7] Ch. 4, sec. 1, Laws of 1977.

appointment by a governor, confirmed by the senate, as prescribed by the law at the time of his appointment. This was as true on the day the 1977 deletion became effective as it was on the day before. The 1977 amendment changed the method of appointment, but it left the method of removal of a state officer appointed by the governor, by and with the advice and consent of the senate, unchanged. As long as Moses remains an officer appointed by the governor, confirmed by the senate, he remains removable from office only by the governor, for cause.

The board counters that although Moses was once removable only by the governor for cause, by virtue of the amendment he is now an officer appointed without the concurrence of the governor. To erase the fact that Moses was in fact appointed by a governor, the board asks this court to interpret the word "officer" in sec. 17.07 "to embrace the term 'office.' "[8] By that the board means that the determination of which category of "officer" in sec. 17.07, Stats., to apply should be determined by considering the nature of the "office" held and that the nature of the office of secretary of veterans affairs changed when the appointment statute was amended.[9] "Embrace" is hardly the word to use, for what the board asks this court to do is to change the word "officer" in sec. 17.07 to "office," so that whenever the legislature amended the appointment of an officer the legislature would have ipso facto changed the manner of removal.

There is more than one good reason why the suggested rewriting of sec. 17.07 should not be done. The removal statute, sec. 17.07, repeatedly refers to state officers, not to state offices, and our court has recognized the

[8] Respondents' Brief at 15.
[9] *Id.* at 14.

distinction in the meaning of the two terms.[10] Reference to an "officer," as distinguished from an "office," creates no ambiguity, and in the absence of ambiguity, language is to be given its ordinary and accepted meaning.[11] Sec. 17.07(3), from which the board would like to escape, refers to officers "appointed" by the governor.[12] It is not easy to appoint "offices." It is people who are appointed. Sec. 17.07(5), where the board would like to end up, uses the pronoun "them" to refer to "officers." This is clearly a reference to people and not to positions.[13] Moreover, when the manner of removal of an officer is to depend on the office held and not the manner of appointment of the individual officer, the statute provides accordingly.[14]

[10] *State ex rel. Reuss v. Giessel,* 260 Wis. 524, 529, 51 N.W.2d 547 (1952) defines "officer" as a term that refers to the individual and not to the office held: "The use of the term 'public officer' rather than 'public office' in sec. 26, art. IV, Const., suggests that it applies to the individual rather than the statutory term."

[11] *Vigil v. State,* 76 Wis.2d 133, 142, 250 N.W.2d 378 (1977), also holding that the popular reasonable import of words should be given effect. *See also: State v. Killory,* 73 Wis.2d 400, 413, 243 N.W.2d 475 (1976), in which we stated the "well-recognized rule of statutory construction that nontechnical words and phrases are to be construed in accordance with their common and ordinary usage." *See also:* Sec. 990.01(1), Stats., providing: "All words and phrases shall be construed according to common and approved usage."

[12] Sec. 17.07(3), Stats.

[13] Sec. 17.07(5), Stats. *See also:* Sec. 17.16(3), Stats., providing that in the procedure for removal for cause: "[S]aid officer shall have full opportunity to be heard in his defense, personally and by counsel." The reference is clearly to a person and not an office.

[14] Sec. 17.07(3), Stats., states: "State officers appointed by the governor by and with the advice and consent of the senate, or appointed by any other officer or body subject to the concurrence of the governor, by the governor at any time, for cause; *but the commissioner of banking and state auditor may be so removed*

The cases cited by the board as to when an individual is or is not a state officer at all[15] are not applicable to the issue here raised which is whether Moses is an "officer" under sec. 17.07(3) or an "officer" under sec. 17.07(5). It is not the nature of the duties performed that determines who can remove. Rather the determinative question is who made the appointment. As to the petitioner, the answer to the question WHO is the governor, with the consent of the senate. We therefore hold that Moses was an officer "appointed by the governor by and with the advice and consent of the senate" both before and after the enactment of the ch. 4, Laws of 1977, amendment to sec. 15.05(1)(b), Stats., and, as such, he was removable under sec. 17.07(3), Stats., only by the governor and only for cause. The board's attempted removal of this petitioner from office on May 20, 1977, was without statutory authority. The board's order removing John R. Moses from his office as secretary of veterans affairs is set aside. The trial court judgment is reversed. The respondent board's discharged is vacated. The acts of those persons serving as acting secretary or secretary of the board between the date of the attempted discharge of John R. Moses and the date of remittitur of this appeal are to be considered the acts of a de facto officer and are not invalidated by this opinion. It is so ordered.

*By the Court.*—Judgment reversed.

DAY, J. (concurring in reversal and dissenting as to nature of remand). The majority opinion states that the question in this case is: Who had the authority to remove the petitioner? The opinion concludes that be-

---

*only by and with the consent of a majority of the members of the senate."* [Emphasis supplied.]

[15] *Burton v. State Appeal Board,* 38 Wis.2d 294, 156 N.W.2d 386 (1968); *Martin v. Smith,* 239 Wis. 314, 1 N.W.2d 163 (1941).

cause the petitioner was originally appointed by the governor, he can only be removed by the governor for cause under sec. 17.16, Stats. To reach this conclusion, the majority determines that a public officer has tenure rights apart from his office. The majority fails to give full effect to sec. 15.05(1)(b), Stats. as amended and the legislative intent expressed by that amendment.

The legislature may change or completely eliminate a public office if it so desires.[1] As this court stated in *State ex rel. Reuss v. Giessel,* 260 Wis. 524, 529, 51 N.W.2d 547 (1952),

"All such offices and their respective tenure had been created by the legislature; they can be changed or abolished entirely by the legislature. That 'whatever is created by statute may be taken away by statute' is a well-settled principle of law."

The majority does not contend that the petitioner's office can not be abolished or amended by statute, rather it contends that the legislature only changed the means of appointment to petitioner's office. This change supposedly left the means of removal of this particular officer, the petitioner, unaffected.

This court has never before held that a public officer can gain some right, not inherent in the office itself.[2] The legal status of an officer can only derive from the character of the office held. This court has stated that it

". . . is concerned not with the panoply of the ceremonials by which the position is assumed but rather the

[1] See also, *State ex rel. Anderson v. Barlow,* 235 Wis. 169, 292 N.W. 290 (1940). In that case it was determined that statutory tenure under the civil service system must give way to the legislature's power to restructure a state department.

[2] To support the Board's position, it is not necessary, as the majority contends that the term "officer" must embrace the term "office." It is only necessary that the rights of an officer should not be broader than the office he holds.

nature of the power that devolves upon the position by virtue of the legislative delegation." *Burton v. State Appeal Board,* 38 Wis.2d 294, 303, 156 N.W.2d 386 (1968).[3]

On March 5, 1977 the legislative delegation of power to the petitioner was changed by Senate Bill No. 63, Ch. 4, Laws of 1977 amending sec. 15.05(1)(b), Stats. The amendment repealed the language stricken below.

". . . If a department is under the direction and supervision of a board, the board shall appoint a secretary to serve at the pleasure of the board, except that the secretary of veterans affairs shall be appointed by the governor with the advice and consent of the senate for an indefinite term, outside the classified service."

By this amendment, the Secretary of Veterans Affairs was to serve "at the pleasure of the Board of Veterans Affairs" and could be removed at any time "at the pleasure of the Board."

This amendment conflicts with sec. 17.07, Stats. providing that an officer appointed by the governor with the consent of the senate may only be removed for cause pursuant to sec. 17.16, Stats. The majority implies that there is no uncertainty here, that the statutes are unambiguous and that the petitioner may only be removed for cause. A cursory reading of sec. 15.05(1)(b), Stats. demonstrates that there is considerable doubt as to whether the petitioner has any other tenure right than the right to serve at the pleasure of the Board.

A conflict exists between these statutes and that conflict allows a consideration of the legislative intent behind the amendment to sec. 15.05(1)(b), Stats. The purpose of statutory construction is to ascertain the

---

[3] The majority contends that this case is inapplicable because it deals with whether or not a person holds a public office. The question of the petitioner's rights to hold the office of Secretary of Veterans Affairs is precisely the question at issue here.

intent of the legislature. *In Matter of Estate of Walker*, 75 Wis.2d 93, 102–104, 248 N.W.2d 410 (1977). That which is intended or implied by the legislature is as much a part of the statute as that which is expressed. *State Medical Society of Wisconsin v. Comm. of Insurance*, 70 Wis.2d 144, 154, 233 N.W.2d 470 (1975).

There is ample evidence that the legislature intended that the amendment of sec. 15.05(1)(b), Stats. should apply to the petitioner. Prior to the amendment, all other secretaries of departments with boards served at the pleasure of their boards. The Secretary of Veterans Affairs was the only exception. That exception was removed by the amendment. If the legislature had intended that the petitioner, the only person who could possibly be affected by the amendment, was to be excepted from its operation it could have done so. The petitioner might have been "grandfathered" into his position, but as the trial court noted, he was not.

That part of the statute which affected the petitioner was completely repealed. That alone is evidence that the legislature intended the change to operate retroactively on any tenure rights the petitioner may have had. *State ex rel. McKenna v. District No. 8*, 243 Wis. 324, 10 N.W. 2d 155 (1943).

The circumstances surrounding the passage of the amendment can not be totally ignored. As the trial court stated in its decision,

".  .  . it might be noted as a matter of public knowledge, as well, that the specific language deletion of importance here, was the subject of public and legislative debate prior to the passage. .  .  . Further, the petitioner, before passage of the bill, stated that he would resign if the bill was passed and he subsequently did tender a resignation."

The legislature determined that, as a matter of public policy, the petitioner, like all other secretaries should be

responsible to a citizen board appointed by the governor. This was to prevent the existence of a public officer with permanent tenure who, short of a discharge for cause, was answerable to no one. That policy decision was clearly within the power of the legislature.

Before this court the petitioner now argues that "no intent can be inferred from the enactment of ch. 4, Laws of 1977, which would compel or justify the conclusion that the tenure acquired by petitioner was to be abolished." (Petitioner's Brief, p. 10.) That was clearly the only purpose of the amendment.

The majority opinion does not consider the constitutional issues raised by the petitioner.

Petitioner argues that even if the legislature intended the amended statute to permit the Board to discharge him, it could not do so since he has a "property interest" in the job. Thus he could only be removed by the governor for cause. The argument is that this "right" accrued to him at the time of his appointment and is protected under the fourteenth amendment.

For the petitioner to have a property interest in continued public employment protected by the fourteenth amendment, he must show that he had a reasonable expectation of continued employment. That reasonable expectation must be based on state law. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed.2d 548 (1972). What has already been stated above shows that in Wisconsin a public officer's tenure may be changed or abolished entirely by the legislature. *State ex rel. Reuss v. Giessel, supra.* Based on Wisconsin law, the petitioner could not have had a reasonable expectation that the legislature would not change his tenure in office. Therefore this tenure was not a property right protected under the fourteenth amendment.

The petitioner also contends that he was deprived of a due process liberty interest protected under the

fourteenth amendment. The trial court did not reach that issue because it was not clearly raised in the amended writ of certiorari. Both parties briefed and argued the liberty interest issue before the trial court. Under these circumstances, the Board could not have been prejudiced by an amendment of the pleadings and I would deem them to be so amended before this court pursuant to sec. 802.09(2), Stats. and *Krudwig v. Koepke*, 227 Wis. 1, 3, 277 N.W. 670 (1938).[4]

The petitioner contends that his due process rights to liberty were infringed because of a derogatory four page statement read by Board member Carbonneau at the May 20, 1977 meeting.

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 27 L. Ed.2d 515, 519, 91 S. Ct. 507 (1971).

A due process liberty interest may be affected when a person loses their job or is charged with wrongdoing.

---

[4] "802.09. *Amended And Supplemental Pleadings.* . . . (2) *Amendments To Conform To The Evidence.* If issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice such party in maintaining the action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence. . ."

In *Krudwig, supra,* this court considered pleadings on appeal as conforming to the proof in the trial court even though there was no formal motion to amend.

For an employee to demonstrate such a loss of liberty, they must have: (1) suffered a stigma or other disability that forecloses their ability to take other employment or, (2) had their good name, reputation, honor or integrity impugned in such a way that it might seriously damage their standing and associations in the community. *Board of Regents, supra,* at 408 U.S. 573, 574, *State ex rel. DeLuca v. Common Council,* 72 Wis.2d 672, 678, 679, 242 N.W.2d 689 (1976).

In *DeLuca, supra,* this court found that a public official's liberty interest was adversely affected where he was charged with performing services for personal friends that he would not perform for others, leaving the implication that he was dishonest. "Charges of this nature that reflect or imply unsavory character traits affect the liberty of a public employee." *DeLuca, supra,* at 72 Wis.2d 679 citing *Hostrop v. Board of Junior College Dist. No. 515, Etc.,* 471 F.2d 488 (7th Cir. 1972).

In *Colaizzi v. Walker,* 542 F.2d 969 (7th Cir., 1976), the court found a denial of a liberty interest where the governor of Illinois dismissed public officials and accused them of abuse of their positions for trying to force an employer to dismiss criminal charges against an employee.

In *Adams v. Walker,* 492 F.2d 1003 (7th Cir. 1974), no denial of liberty was found where an official was charged with incompetence, neglect of duty and malfeasance in office. These terms were used to satisfy the requirements of the Illinois Constitution for removal of officers.

At the May 20, 1977 meeting Board member Carbonneau stated,

"And, incredibly, now we learn of yet another pay-off by the Secretary—the full-time employment of the former chief spokesman for the Vietnam Veterans' Advisory Council by the Department of Veterans Affairs at the

same time this individual is employed by the University of Wisconsin."

This statement implies unsavory character traits at least as much as the charges in *DeLuca, supra.* These charges would tend to affect the petitioner's good name or reputation and in making them the Board deprived the petitioner of a due process liberty interest protected by the fourteenth amendment.[5]

In *Board of Regents of State Colleges v. Roth,* at 408 U.S. 570, 571, the Supreme Court stated that,

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the fourteenth amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of *prior* hearing is paramount."

In a footnote to that statement, the court said,

"Before a person is deprived of a protected interest, he must be afforded opportunity for some kind of a hearing, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event."

The *Roth* court also stated: "The purpose of such notice and hearing is to give the person an opportunity to clear his name. Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons." *Roth, supra* at 408 U.S. 573.

The petitioner was entitled to a pre-termination hearing to respond to the charges made against him. Until that hearing, he should be reinstated with back pay. *McNeil v. Butz,* 480 F.2d 314 (4th Cir. 1973) ; *Stewart v.*

---

[5] The Board claims that these were Mr. Carbonneau's private opinions, but they were made at a meeting of the Board by a Board member, and given as a reason for dismissal by that member.

*Pearce,* 484 F.2d 1031 (9th Cir. 1973). I dissent to that part of the majority opinion which holds the petitioner may only be discharged by the governor for cause. I concur in that part of the opinion that reverses the trial court's judgment affirming the Board's dismissal of the petitioner. But in mandating this case, I would remand to the trial court with instructions to order the Board to reinstate the petitioner and provide him with a due process hearing on the charges made against him. I therefore concur in reversal and dissent as to nature of remand.

