ITALO BENSONI, Chairman Board of Veterans Affairs
You request my opinion on three questions relating to the proper authority to establish the salary level of the Secretary of Veterans Affairs. Your specific questions are:
 "1. Who has the authority to set the salary level of the Secretary, The Board of Veterans Affairs or the Governor?
 "2. Can the salary raise of the Secretary exceed the 5% salary supplement of the 1977-78 Executive Pay Plan?
 "3. Can a salary increase be retroactive to the date of the illegal firing of the incumbent secretary, the date that the interim secretary was hired or the date of the Supreme Court Opinion reinstating the incumbent secretary or can it be prospective only?"
In answer to your first question, the Governor has the authority to set the salary level of the incumbent Secretary of Veterans Affairs. The Legislature has provided in sec. 20.923
(1)(a), Stats., that:
 ". . . The salary-setting authority of individual boards, commissions, elective and appointive officials elsewhere provided by law is subject to and limited by this section, and the salary rate for these positions upon appointment and subsequent thereto shall be set by the appointing authority pursuant to this section, unless the position is subject to article IV, section 26 of the state constitution."
The Governor is the appointing authority for the incumbent Secretary Moses. Moses v. Board of Veterans Affairs, 80 Wis.2d 411,415-416, 259 N.W.2d 102 (1977). The Governor and not the Board of Veterans Affairs has the authority to set the salary level of the incumbent subject to statutory restraints.
In my opinion the incumbent Secretary is not subject to Wis. Const. art. IV, sec. 26. That section, as material here, provides that the compensation of a public officer shall not be "increased or diminished during his term of office." *Page 259 
The Secretary serves for an "indefinite term." Section 15.05
(1)(b), Stats. (1975). In my opinion the constitutional prohibition on changes in compensation apply only to officers serving fixed terms. This conclusion warrants an extended discussion since one of my predecessors stated that "a serious question might be presented" whether the Legislature could alter the compensation of an officer serving a lifetime tenure, 6 Op. Att'y Gen. 143, 144 (1917).
It is beyond cavil that the framers of the constitution were addressing themselves to elective officers who serve fixed terms. The constitution of 1846 set two-year terms for governor, lieutenant governor, secretary of state, treasurer and attorney general. Brown, The Making of the Constitution, Part 1, 1949 Wis. L. Rev. 648, 665 (1949). In fact, it was said the officers would "come in and go out of office at the same time." Quaife, TheAttainment of Statehood, Wisconsin Historical Society Collection, vol. XXIX, p. 28. The officers would have "short terms of office." Id. at 76. Although the salaries of certain officers were set by the constitution itself, other officers could receive no "extra compensation under any pretense, or in any form whatever." Brown, supra, p. 665. Quaife, The Convention of 1846, Wisconsin Historical Society Collection, vol. XXVII, P. 327.
The voters rejected the constitution of 1846. But at the subsequent convention the provision against extra compensation was retained. In addition, that convention added the provision against salary changes "during his term of office." There was no debate. Brown, The Making of the Wisconsin Constitution, Part 11, 1952 Wis. L. Rev. 23, 32 (1952).
Thus, the framers of the constitution conceived as officers those who serve limited and fixed terms. They did not conceive of the instant situation of an officer serving an indefinite term.
Subsequently, the opinions of the court and of this office consistently have construed this constitutional provision as applying only to officers serving fixed terms. In State ex rel.Bashford v. Frear, 138 Wis. 536, 539, 120 N.W. 216 (1909), the court said:
 "The general trend of authority is this way. The constitution or other written law creates the office and fixes the term thereof and gives thereto the incident of a specific salary. The office, the term, and the incident may exist for any period of time without *Page 260 
the office being filled or without there being any method provided for filling it. Upon such method being provided and the office being filled the incumbent takes it with its fixed term and incident. If he goes out during such term and another steps in the latter does not take a new term but takes a part of the same term prior thereto enjoyed by his predecessor. The term continues during its fixed period with its incident for such period regardless of how many incumbents there may be, each succeeding the other. Where another incumbent goes in at the commencement of the full term prescribed by law, such full term becomes his term, within the meaning of language in the fundamental law prohibiting any change in an officer's salary during his term of office, and in case of his going out during such term and being succeeded by another such other succeeds to the same term as that held by his predecessor, so that, during his incumbency, the full term, so far as not yet run, becomes his term in the constitutional sense."
Thus, the "term" an officer has is one to which another might succeed. This, of course, would be impossible in the case of an indefinite term where the term lasts only so long as the office is held by a particular office holder.
The court explicitly has stated that the officer covered by Wis. Const. art. IV, sec. 26, ordinarily is one who holds a definite as opposed to an indefinite term. In Sieb v. Racine,176 Wis. 617, 624, 187 N.W. 989 (1922), the court held that a superintendent of schools, who had a fixed term contract under a statute calling for his election for a "term not to exceed three years," was not a public officer in part because he did not have a "definite term." Relying on this holding, in State ex rel.Zimmerman v. Dammann, 201 Wis. 84, 99, 228 N.W. 593 (1930), the court held that legislators are covered by Wis. Const. art. IV, sec. 26, saying:
 "Members of the legislature are chosen for a definite term; they exercise a part of the sovereign power of the state; their duties are definite and specific; they are paid from the public treasury and answer every call of any recognized definition of a public officer. . . ."
At 8 Op. Att'y Gen. 186 (1919), one of my predecessors said legislative employes are not within the provision, notwithstanding *Page 261 
they were subject to hire and dismissal by legislative officers with two-year terms, because the employes themselves did not serve fixed terms. Instead, those employes were "subject to the same rules as other state employes under the civil service act." Id., at 188. At 1912 Op. Att'y Gen. 117, 118-119 (1911), the Attorney General said a public official could not receive a salary increase because he received a salary from the state treasury "and held a definite term of office fixed by law." Accordingly, at 8 Op. Att'y Gen. 138, 140 (1919), the Attorney General said officers serving at the pleasure of another were not within Wis. Const. art. IV, sec. 26, because they had no "fixed term."
Thus, the framers of the constitution and the authoritative constructions of Wis. Const. art. IV, sec. 26, have limited its reach to those serving fixed or definite terms.
Unquestionably, the Secretary does not serve a fixed or definite term. His term is "indefinite." Sec. 15.05 (1)(b), Stats. (1975). "`[A] term of office, as well as any term, implies the existence of a definite boundary."' 6 Op. Att'y Gen. 143, 145 (1917). See also 41 Words Phrases, Term of Office, PP. 621, 624-626. Accord: Haack v. Banish, 287 Mich. 592, 283 N.W. 700,702 (1939). (A person holding office "during good behavior" has an indefinite term and is not within the prohibition against salary changes "during his term of office.")
Accordingly, I conclude that the incumbent Secretary is not covered by the prohibition in Wis. Const. art. IV, sec. 26, against salary changes during a term of office and that the Governor is the appointing authority with power to make such changes subject to statutory restraints.
As to your second and third questions, I have this day issued an opinion to the Governor as the appointing authority dealing with these issues. I enclose a copy of that opinion.
BCL:CDH *Page 262