# Supreme Court of Wisconsin

| | |
|---|---|
| Case No.: | 2021AP1673 |

| | |
|---|---|
| Complete Title: | State of Wisconsin ex rel. Joshua L. Kaul,<br>           Plaintiff-Appellant,<br>    v.<br>Frederick Prehn,<br>           Defendant-Respondent,<br>Wisconsin Legislature,<br>           Intervenor-Defendant-Respondent. |

ON BYPASS FROM THE COURT OF APPEALS
(No Cite)

| | |
|---|---|
| Opinion Filed: | June 29, 2022 |
| Submitted on Briefs: | |
| Oral Argument: | March 10, 2022 |

| | |
|---|---|
| Source of Appeal: | |
|   Court: | Circuit |
|   County: | Dane |
|   Judge: | Valerie Bailey-Rihn |

Justices:
ZIEGLER, C.J., delivered the majority opinion of the Court, in which ROGGENSACK, REBECCA GRASSL BRADLEY, and HAGEDORN, JJ., joined. DALLET, J., filed a dissenting opinion in which ANN WALSH BRADLEY and KAROFSKY, JJ., joined.
Not Participating:

Attorneys:
For the plaintiff-appellant, there were briefs by *Gabe Johnson-Karp, Anthony D. Russomanno,* and *Colin A. Hector,* assistants attorney general, with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Gabe Johnson—Karp*.

For the defendant-respondent, there was a brief filed by *Mark P. Maciolek* and *Murphy Desmond, S.C.*, Madison. There was an oral argument by *Mark P. Maciolek.*

For the intervenor-defendant-respondent, there was a brief filed by *Ryan J. Walsh, John K. Adams* and *Eimer Stahl LLP,* Madison. There was an oral argument by *Ryan J. Walsh.*

An amicus curiae brief was filed by *Christa O. Westerberg* and *Pines Bach LLP,* Madison, for the Humane Society of the United States and the Center for Biological Diversity.

An amicus curiae brief was filed by *Scott B. Thompson, Jeffrey A. Mandell, Rachel E. Snyder, and Carly Gerads* and *Law Forward, Inc.,* Madison and *Stafford Rosenbaum LLP,* Madison and *Summer H. Murshid* and *Hawks Quindel S.C.*, of counsel, Milwaukee for the America Federation of Teachers-Wisconsin.

**2022 WI 50**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2021AP1673
(L.C. No. 2021CV1994)

STATE OF WISCONSIN : IN SUPREME COURT

**State of Wisconsin ex rel. Joshua L. Kaul,**

 **Plaintiff-Appellant,**

 **v.**

**Frederick Prehn,**

 **Defendant-Respondent,**

**Wisconsin Legislature,**

 **Intervenor-Defendant-Respondent.**

**FILED**

**JUN 29, 2022**

Sheila T. Reiff
Clerk of Supreme Court

---

ZIEGLER, C.J., delivered the majority opinion of the Court, in which ROGGENSACK, REBECCA GRASSL BRADLEY, and HAGEDORN, JJ., joined. DALLET, J., filed a dissenting opinion in which ANN WALSH BRADLEY and KAROFSKY, JJ., joined.

---

APPEAL from a judgment and an order of the Circuit Court for Dane County, Valerie Bailey-Rihn, Judge. *Affirmed.*

¶1 ANNETTE KINGSLAND ZIEGLER, C.J. This case is before the court on bypass pursuant to Wis. Stat. § (Rule) 809.60

(2019-20).[1]    We review an order of the Dane County circuit court,[2] dismissing the State's complaint with prejudice.

¶2    The Attorney General, on behalf of the State, seeks quo warranto and declaratory judgment relief, alleging that the defendant, Frederick Prehn, unlawfully holds a position on the Wisconsin Board of Natural Resources ("the DNR Board").  The State argues that when Prehn's term expired on May 1, 2021, he no longer possessed any legal right to the position.  In addition, the State claims that Prehn is not entitled to "for cause" protection and can be removed at the discretion of the Governor.  The circuit court disagreed and dismissed the case, reasoning that there was no statutory or constitutional basis to remove Prehn from office without cause.

¶3    We affirm the decision of the circuit court.  Under Wis. Stat. § 17.03, the expiration of Prehn's term on the DNR Board does not create a vacancy.  Prehn lawfully retains his position on the DNR Board as a holdover.  Therefore, the Governor cannot make a provisional appointment to replace Prehn under Wis. Stat. § 17.20(2)(a).  Until his successor is nominated by the Governor and confirmed by the senate, under Wis. Stat. § 17.07(3), Prehn may be removed by the Governor only for cause.  This conclusion complies with the plain language of

---

[1] All subsequent references to the Wisconsin Statutes are to the 2019-20 version unless otherwise indicated.

[2] The Honorable Valerie Bailey-Rihn presided.

the Wisconsin Statutes and does not raise constitutional concerns. The State's complaint is dismissed with prejudice.

I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶4 The Wisconsin Department of Natural Resources ("DNR") is an environmental agency that regulates parks and natural resources around the state. The agency is placed "under the direction and supervision of the natural resources board." Wis. Stat. § 15.34(1). The DNR Board has seven members nominated by the Governor and confirmed by the senate for staggered six-year terms. Wis. Stat. §§ 15.07(1)(a), 15.34(1) & (2)(a). In addition, the DNR's Secretary must be nominated by the Governor and confirmed by the senate. Wis. Stat. § 15.05(1)(c).

¶5 In May 2015, Governor Scott Walker nominated Prehn to the DNR Board. Prehn was confirmed by the senate in November 2015, with a term to expire on May 1, 2021.

¶6 On April 30, 2021, Governor Tony Evers announced the appointment of Sandra Dee E. Naas to replace Prehn on the DNR Board. However, the senate has not confirmed Naas and Prehn has declined to step down from his position. Prehn continues to act as a member of the DNR Board, attending meetings and submitting votes on DNR policies and positions as a full DNR Board member.

¶7 On August 17, 2021, the Attorney General, on behalf of the State, filed this action in Dane County circuit court alleging quo warranto and declaratory judgment claims. The State argued that because Prehn's term expired in May 2021, Prehn was unlawfully holding the office of a DNR Board member. In addition, the State claimed that Prehn could be removed at

3

the pleasure of the Governor. The State asked that the circuit court order Prehn removed from office or, in the alternative, that the circuit court declare that the Governor can remove him without cause.

¶8 On August 27, 2021, Prehn filed a motion to dismiss the case for failure to state a claim. He argued that no vacancy had yet occurred for the position he occupied on the DNR Board and he could remain on the DNR Board until a successor was confirmed by the senate. The circuit court received briefing from the parties and the Wisconsin Legislature ("the Legislature"), and on September 17, 2021, granted Prehn's motion to dismiss. The circuit court explained that the expiration of Prehn's term of office did not create a vacancy, and the Governor could not use his provisional appointment power to replace Prehn on the DNR Board. In conclusion, the circuit court held that Prehn was not illegally occupying his position, he was entitled to for cause protections, and he could not be removed at the pleasure of the Governor. The circuit court dismissed the complaint with prejudice.

¶9 On September 20, 2021, the State appealed the circuit court's order and soon thereafter filed a petition in this court to bypass the court of appeals. On November 16, 2021, we granted the petition to bypass. We also granted the Legislature's request to intervene as a party.

## II. STANDARD OF REVIEW

¶10 In this case, we review a motion to dismiss for failure to state a claim. The motion "tests the legal

4

sufficiency of the complaint." DeBruin v. St. Patrick Congregation, 2012 WI 94, ¶11, 343 Wis. 2d 83, 816 N.W.2d 878. "For purposes of the motion, we accept as true all facts well-pleaded in the complaint and the reasonable inferences therefrom." Id. In order to survive a motion to dismiss, "[p]laintiffs must allege facts that plausibly suggest they are entitled to relief" as a matter of law. Data Key Partners v. Permira Advisers LLC, 2014 WI 86, ¶31, 356 Wis. 2d 665, 849 N.W.2d 693. "We review de novo the circuit court's dismissal of a complaint for failure to state a claim." Doe v. Archdiocese of Milwaukee, 2005 WI 123, ¶19, 284 Wis. 2d 307, 700 N.W.2d 180.

¶11 This case also presents questions of statutory and constitutional interpretation. "Interpretation of a statute is a question of law that we review de novo, although we benefit from the analyses of the circuit court and the court of appeals." Estate of Miller v. Storey, 2017 WI 99, ¶25, 378 Wis. 2d 358, 903 N.W.2d 759. "[S]tatutory interpretation begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry. Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations and quotations omitted). In addition, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to

5

the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id., ¶46.

¶12 We interpret the Wisconsin Constitution de novo. Johnson v. Wis. Elections Comm'n, 2021 WI 87, ¶22, 399 Wis. 2d 623, 967 N.W.2d 469. "Our goal when we interpret the Wisconsin Constitution is to give effect to the intent of the framers and of the people who adopted it." Id. "In interpreting the Wisconsin Constitution, we focus on the language of the adopted text and historical evidence." State v. Halverson, 2021 WI 7, ¶22, 395 Wis. 2d 385, 963 N.W.2d 847. Such historical evidence includes "the practices at the time the constitution was adopted, debates over adoption of a given provision, and early legislative interpretation as evidenced by the first laws passed following the adoption." Id. (quotations omitted).

### III. ANALYSIS

¶13 The State alleges quo warranto and declaratory judgment claims. Quo warranto actions "test [the] ability [of an individual] to hold office." State ex rel. Shroble v. Prusener, 185 Wis. 2d 102, 108-09, 517 N.W.2d 169 (1994). Wisconsin Stat. § 784.04(1)(a) states that the Attorney General may bring a quo warranto claim "[w]hen any person shall usurp, intrude into or unlawfully hold or exercise any public office, civil or military, or any franchise within this state, or any office in a corporation created by the authority of this state." If successful, the subject office holder may be "excluded from the office, franchise or privilege." Wis. Stat. § 784.13.

6

Generally, "quo warranto relief is an exclusive remedy, except when the issue warranting quo warranto relief is ancillary to an issue that does not sound in quo warranto." City of Waukesha v. Salbashian, 128 Wis. 2d 334, 348, 382 N.W.2d 52 (1986).

¶14  In its quo warranto claim, the State argues that Prehn does not legally hold office because his term expired and his office is therefore vacant.  With the Governor's selection of Naas as a provisional appointee to replace Prehn, the State claims Prehn must be immediately removed.  The State also seeks a declaratory judgment that Prehn can be removed at the pleasure of the Governor.  No party contests or presents arguments on the State's ability to bring a declaratory judgment claim in this context.

¶15  Thus, we will review whether Prehn lawfully holds office as a DNR Board member and whether Prehn has for cause protections.  We will consider each issue in turn.

A.  Whether Prehn Lawfully Holds Office.

¶16  The State indicates that Prehn's term of office expired on May 1, 2021.  Therefore, according to the State, there is now a vacancy in Prehn's position on the DNR Board. The State contends that Naas must replace Prehn as a provisional gubernatorial appointment.  We disagree.  Accepting all facts alleged in the complaint as true, we hold that the expiration of Prehn's term did not create a vacancy, and Prehn lawfully retains his office as a holdover.  DeBruin, 343 Wis. 2d 83, ¶11.

¶17 The DNR is "under the direction and supervision of the natural resources board." Wis. Stat. § 15.34(1). Wisconsin Stat § 15.05 describes the allocation of authority between the DNR Board and the Secretary:

> [T]he powers and duties of the board shall be regulatory, advisory and policy-making, and not administrative. All of the administrative powers and duties of the department are vested in the secretary, to be administered by him or her under the direction of the board. The secretary, with the approval of the board, shall promulgate rules for administering the department and performing the duties assigned to the department.

§ 15.05(1)(b).

¶18 The Governor must nominate and the senate must confirm members of the DNR Board, who serve six-year terms. Wis. Stat. §§ 15.07(1)(a), 15.34(1) & (2)(a). Because DNR Board members serve in an office "filled by appointment of the governor for a fixed term by and with the advice and consent of the senate," the Governor may remove DNR Board members "for cause." Wis. Stat. § 17.07(3). "Cause" is statutorily defined as "inefficiency, neglect of duty, official misconduct, or malfeasance in office." Wis. Stat. § 17.001. The DNR Secretary must be "nominated by the governor, and with the advice and consent of the senate." Wis. Stat. § 15.05(1)(c). The Secretary "serve[s] at the pleasure of the governor," id., and can be removed "by the governor at any time." § 17.07(4).

¶19 The DNR Board is subject to carefully defined vacancy rules. Article XIII, Section 10 of the Wisconsin Constitution states that "[t]he legislature may declare the cases in which

8

any office shall be deemed vacant, and also the manner of filling the vacancy, where no provision is made for that purpose in this constitution." The provision provides the Legislature "the power to declare when an office shall be deemed to be vacant." State ex rel. Thompson v. Gibson, 22 Wis. 2d 275, 290, 125 N.W.2d 636 (1964).

¶20 The Legislature exercised its authority to determine the existence of a vacancy by enacting Wis. Stat. § 17.03. Id.; accord State v. Devitt, 82 Wis. 2d 262, 266, 262 N.W.2d 73 (1978). Section 17.03 states, in pertinent part:

> Except as otherwise provided, a public office is vacant when:
>
> (1) The incumbent dies.
>
> (2) The incumbent resigns.
>
> (3) The incumbent is removed.
>
> . . . .
>
> (10) If the office is elective, the incumbent's term expires, except for the office of sheriff, coroner, register of deeds or district attorney.
>
> . . . .
>
> (13) Any other event occurs which is declared by any special provision of law to create a vacancy.

¶21 When a vacancy occurs in an appointed office such as the DNR Board, the office "shall be filled by appointment by the appointing power and in the manner prescribed by law for making regular full term appointments thereto." Wis. Stat. § 17.20(1). In the case of the DNR Board, individuals selected to fill a vacancy must be nominated by the Governor and confirmed by the

senate. Id.; Wis. Stat. § 15.07(1)(a). Individuals appointed to "fill vacancies . . . shall hold office for the residue of the unexpired term or, if no definite term of office is fixed by law, until their successors are appointed and qualify."[3] § 17.20(1). Because DNR Board members have a fixed term by law, individuals selected to fill a vacancy on the DNR Board step into the shoes of the prior member and serve for the remainder of the term. Id.; Wis. Stat. § 15.34(2)(a).

¶22 The Governor need not wait for senate advice and consent to ensure someone occupies a DNR Board seat once a vacancy occurs. "Vacancies occurring in the office of any officer normally nominated by the governor, and with the advice and consent of the senate appointed, may be filled by a provisional appointment by the governor for the residue of the unexpired term, if any, subject to confirmation by the senate." Wis. Stat. § 17.20(2)(a). While a provisional appointee serves, she "may exercise all of the powers and duties of the office to which such person is appointed during the time in which the appointee qualifies." Id.

¶23 Here, the parties accept that Prehn was properly nominated by the Governor and confirmed by the senate to serve a

---

[3] "'Qualified,' when applied to any person elected or appointed to office, means that such person has done those things which the person was by law required to do before entering upon the duties of the person's office." Wis. Stat. § 990.01(33). For instance, a qualification of a DNR Board member is that the member "take and file the official oath." Wis. Stat. § 15.07(7).

full term on the DNR Board. Wis. Stat. §§ 15.07(1)(a), 15.34(1) & (2)(a). His six-year term expired by statute in May 2021. § 15.07(1)(a) & (1)(c) ("[F]ixed terms of members of boards shall expire on May 1."). Once Prehn's term expired, the Governor had the prerogative to nominate another individual to serve a six-year term between May 2021 and May 2027 and replace Prehn. §§ 15.34(1), 15.07 (explaining that Board members "shall be nominated by the governor . . . to serve for terms prescribed by law"); see also Thompson, 22 Wis. 2d at 293 (explaining that nominees "duly appointed and confirmed by the senate" take over the office from their successors); State ex rel. Martin v. Heil, 242 Wis. 41, 48-49, 7 N.W.2d 375 (1942) (stating that officials who, through established legal processes, are selected for a term position take office from any individual currently occupying the position as a holdover (citing State ex rel. Pluntz v. Johnson, 176 Wis. 107, 112-16, 184 N.W. 183, vacating judgment on rehearing, 186 N.W. 729 (1922))). However, that nomination is subject to "the advice and consent of the senate." § 15.07(1)(a). If the nominee is not confirmed, the nominee is not "appointed" into office and cannot exercise the authority assigned to that position. Id. While the Governor can make a provisional appointment who exercises "all of the powers and duties of the office," subject to later confirmation by the senate, there must first be a "vacancy" to fill. Wis. Stat. § 17.20(2)(a).

11

¶24 The expiration of Prehn's term did not create a vacancy. Thus, the Governor did not have a right to make a provisional appointment under Wis. Stat. § 17.20(2)(a).

¶25 Wisconsin Stat. § 17.03 provides a list of events that cause a vacancy. The list is detailed and includes various types of events, ranging from death to, in the case of a school district office, "absen[ce] from the district for a period of 60 days." § 17.03(1), (4m). The list is exclusive, "[e]xcept as otherwise provided" or "declared by any special provision of law." § 17.03, 17.03(13). By the plain text of the statute, expiration of a term for an appointed office is not included as an event causing a vacancy. This is a straightforward application of the canon of statutory interpretation expressio unius est exclusio alterius, "[t]he expression of one thing implies the exclusion of others." State v. Dorsey, 2018 WI 10, ¶29, 379 Wis. 2d 386, 906 N.W.2d 158; see Andruss v. Divine Savior Healthcare Inc., 2022 WI 27, ¶30, 401 Wis. 2d 368, 973 N.W.2d 435 (explaining a statute that listed individuals and entities subject to a healthcare Chapter of the Wisconsin code, but did not state a specific type of entity in the list, was "a textbook example of the canon" and demonstrated that the specific entity was neither included in the list nor subject to the Chapter). The Legislature was deliberate and specific in defining which events constitute a vacancy, and explicitly stated that the list was exclusive absent a contrary provision of law. § 17.03, 17.03(13). The statute by its plain text excluded the expiration of appointed terms; we must give effect

12

to this plain language. Kalal, 271 Wis. 2d 633, ¶44 ("Judicial deference to the policy choices enacted into law by the legislature requires that statutory interpretation focus primarily on the language of the statute.").

¶26 This conclusion is bolstered by the fact that the list of vacancies under Wis. Stat. § 17.03 expressly includes the expiration of an incumbent's term "[i]f the office is elective." § 17.03(10). The Legislature clearly demonstrated the wherewithal and ability to include the expiration of an incumbent's term for public office in the list of vacancies under § 17.03. See Andruss, 401 Wis. 2d 368, ¶¶30, 37 (reasoning that the Legislature's choice to consider corporate affiliation for one type of healthcare provider under statute demonstrated Legislature's "ability to [do so]"; its decision not to do so for other healthcare providers indicated corporate affiliation was not be considered); State v. Yakich, 2022 WI 8, ¶24, 400 Wis. 2d 549, 970 N.W.2d 12 (explaining that the Legislature chose not to set or limit how multiple NGI commitments may be imposed as it did in other statutes and reasoning that "we must give effect to the legislature's choice"). The Legislature included term expiration in the vacancy list for elected offices, but did not for appointed offices. To read the statute to include all term expirations would render the phrase "[i]f the office is elective" in § 17.03(10) completely superfluous. Kalal, 271 Wis. 2d 633, ¶46 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage."). Section

13

17.03 unambiguously excluded the expiration of appointed terms from the list of vacancy events.

¶27 Notably, we came to the same conclusion in State ex rel. Thompson v. Gibson. In Thompson, we explained that

> [section] 17.03 provides that an office shall be deemed to be vacant upon (among other things) the death, resignation or removal of the incumbent, but nowhere is it declared that an office is vacant when an incumbent holds over after expiration of the term for which he was initially appointed.

22 Wis. 2d at 290. We see no reason to depart from Thompson's reasoning, which remains as sound today as it did when the case was first decided.

¶28 The State argues that in order to read Wis. Stat. § 17.03 in conformity with common law jurisprudence, the expiration of Prehn's term in office must be construed as a vacancy. However, it is well established in Wisconsin precedent and the common law that appointed officers can lawfully holdover after the expiration of their term until a successor is properly appointed to the position. In Thompson, we held unambiguously that appointed incumbents whose terms had expired could "holdover in office until their successors are duly appointed and confirmed by the senate." 22 Wis. 2d at 293. This was in line with prior Wisconsin precedent. See, e.g., Heil, 242 Wis. at 48-49 (explaining that "[t]he absence of words extending the term until such time as a successor has been duly elected and qualified is, of course, not wholly conclusive and . . . there has been a tendency in the authorities to hold, in spite of the absence of these words, that an incumbent holds over until his

14

successor is selected and qualified" (citing Pluntz, 176 Wis. 107)); Pluntz, 176 Wis. at 114 ("[T]he general trend of decisions in this country is to the effect that, where the written law contains no provision either express or implied to the contrary, an officer holds his office until his successor is elected and qualified."). It was also in line with the common law. 63C Am. Jur. 2d Public Officers and Employees § 148 (2022) ("[A]s a general rule, apart from any constitutional or statutory regulation on the subject, an incumbent of an office may hold over after the conclusion of his or her term until the election [or appointment] and qualification of a successor."); 67 C.J.S. Officers § 154 (2022) ("As a general rule, in the absence of a constitution or statute providing otherwise, an officer is entitled to hold office until a successor is appointed or elected and has qualified."). By statute, Prehn's term has expired, but he is lawfully retaining office as a holdover until a successor is legally appointed, i.e., nominated and confirmed by the senate. Wis. Stat. §§ 15.07(1)(a), 15.34(1). Neither our precedents nor the common law support the State's position that the expiration of Prehn's term must be construed as a vacancy, notwithstanding the text of Wis. Stat. § 17.03.

¶29 The State also points out that the statutes setting the length of DNR Board member's terms of office indicate that DNR Board members "serve for terms prescribed by law" and their terms "shall expire" after six years. Wis. Stat. § 15.07(1)(a) & (1)(c). The State cites this language to argue that Prehn can

15

no longer be in office because he has served his term and therefore, Prehn is now illegally holding office. But the State's conclusion does not follow from the statutes upon which it relies. It is undoubtedly true that Prehn serves a defined term of office, and it is accepted that Prehn's term expired in May 2021. However, those realities say nothing about whether there is now a "vacancy" in Prehn's DNR Board position under Wis. Stat. § 17.03 justifying a provisional appointment under Wis. Stat. § 17.20(2)(a), which the State in this case seeks. Because Prehn's term expired, the Governor now has the prerogative to appoint a successor who, if confirmed, may replace Prehn on the Board for a full appointed term. Wis. Stat. §§ 15.34(1), 15.07; Thompson, 22 Wis. 2d at 293; Heil, 242 Wis. at 48-49. Without the expiration of Prehn's term, the Governor would not have the ability to appoint a replacement to complete a successive term. Further, if the Governor wished to replace Prehn prior to the completion of Prehn's term, the Governor would need to overcome Prehn's "for cause" protections. Wis. Stat. § 17.07(3). The Governor does not need to explain the reasons for nominating another individual for senate confirmation to replace Prehn.

¶30 Nonetheless, as explained above, the plain text of Wis. Stat. § 17.03 establishes that the expiration of a defined term for an appointed office does not create a vacancy. Without a vacancy, the Governor cannot make a provisional appointment and Prehn cannot be replaced with an individual whom the senate has not confirmed. As we correctly explained in Thompson,

16

"after the expiration of [incumbents'] terms," "the incumbents . . . may holdover in office until their successors are duly appointed and confirmed by the senate." 22 Wis. 2d at 293. This conforms with well established law. Heil, 242 Wis. at 48-49; Pluntz, 176 Wis. at 113-16; 63C Am. Jur. 2d Public Officers and Employees, supra ¶28; 67 C.J.S. Officers, supra ¶28.

¶31 Finally, the State cites statutes for other offices that specify term lengths based on when a successor is appointed. For instance, election officials at the municipal level are appointed to "hold office for 2 years and until their successors are appointed and qualified." Wis. Stat. § 7.30(6)(a). Local fire and police commissioners serve terms of "5 years . . . and until their respective successors shall be appointed and qualified." Wis. Stat. § 62.50(1h). The State argues that the inclusion of this language for these offices implies that the expiration of an appointed term as a general matter creates a vacancy. In so doing, the State notes that Wis. Stat. § 17.03 provides an exclusive list of vacancies "[e]xcept as otherwise provided" or "declared by any special provision of law." § 17.03, 17.03(13).

¶32 The State is correct that some statutes define terms for different offices in a different manner than Wis. Stat. § 15.07 defines terms for DNR Board members. But that does not answer whether incumbents may stay in office after their term has expired, however that term is defined, or whether the expiration of terms for appointed offices create a vacancy.

17

Under the law in this state, absent statutory or constitutional language prohibiting a holdover period, incumbents may lawfully holdover after their statutorily prescribed term has concluded and until their successor is appointed and qualified. Thompson, 22 Wis. 2d at 293; Heil, 242 Wis. at 48-49; Pluntz, 176 Wis. at 113-16; 63C Am. Jur. 2d Public Officers and Employees, supra ¶28; 67 C.J.S. Officers, supra ¶28. And under Wis. Stat. § 17.03, the expiration of appointed terms of office do not create vacancies justifying a provisional appointment, unless a provision of law states otherwise. Wis. Stat. §§ 17.03, 17.03(13); 17.20(2)(a). No statute or constitutional provision has been identified that prohibits DNR Board members from lawfully holding over, and no statute or constitutional provision cited to the court defines the expiration of a DNR Board member's term as a vacancy.

¶33 Simply because some offices in this state have defined terms of office to end when a successor is appointed or qualified does not imply that holdover periods are prohibited for other offices such as the DNR Board, after the expiration of fixed terms. As we explained in Thompson, the existence of an explicit "holdover clause" makes it "even more clear that the office is not 'vacant'" simply due to the fact that the time specified by statute for holding office (e.g., two years for municipal election officials) has passed. 22 Wis. 2d at 293-94. The existence of holdover clauses in some statutes did not prevent the Thompson court from recognizing, in line with precedent and the common law, that incumbents "may holdover in

18

office until their successors are duly appointed and confirmed by the senate," even without explicit statutory authorization. Id. at 293.

¶34 Furthermore, even if for some positions the Legislature chose to explicitly incorporate the common law rule through a holdover provision does not on its own imply the abrogation of the established common law rule for other positions that do not include a holdover provision, such as the DNR Board. See Strenke v. Hogner, 2005 WI 25, ¶29, 279 Wis. 2d 52, 694 N.W.2d 296 ("To accomplish a change in the common law, the language of the statute must be clear, unambiguous, and peremptory."); Biart v. First Nat'l Bank of Madison, 262 Wis. 181, 191, 54 N.W.2d 175 (1952) ("It is a principle of statutory construction that the rules of common law are not to be changed by doubtful implication."). Restating the common law for a specific class of offices should not be interpreted as removing common law rules for offices outside the class. Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 318-19 (2012) (reasoning that a statute explicitly stating dogs "wearing tax tag[s]" are personal property protected under tort law did not abrogate the common law rule that all dogs are personal property protected under tort law, notwithstanding the potential application of the expressio unius canon); see also Fuchsgruber v. Custom Assocs., Inc., 2001 WI 81, ¶¶18-30, 244 Wis. 2d 758, 628 N.W.2d 833 (explaining that a statute affecting the common law for contributory negligence in negligence suits did not affect the

19

common law for product liability suits, despite the fact that product liability law incorporated and heavily utilized contributory negligence principles); Schmidt v. N. States Power Co., 2007 WI 136, ¶¶66-67, 305 Wis. 2d 538, 742 N.W.2d 294 (reasoning that a statute setting standards for electricity safety did not abrogate common law negligence rules on safety and risk, despite the rules affecting the same types of businesses performing the kinds of services).

¶35 Under Wisconsin law, the expiration of an appointed term of office does not create a vacancy justifying a provisional appointment. Wis. Stat. §§ 17.03, 17.20(2)(a). Members of the DNR Board whose terms have expired may remain in office as holdovers until their successors are properly nominated by the Governor and confirmed by the senate. Thompson, 22 Wis. 2d at 293; 63C Am. Jur. 2d Public Officers and Employees, supra ¶28; 67 C.J.S. Officers, supra ¶28; Wis. Stat. §§ 17.03, 15.07(1)(a), 15.34(1) & (2)(a). Prehn lawfully holds office as a holdover, and because there is no vacancy in Prehn's position, the Governor may not replace Prehn through use of a provisional appointment. § 17.20(2)(a).

B. Whether Prehn Has For Cause Protections.

¶36 The State argues that Prehn does not have for cause protections and can be removed at the pleasure of the Governor. According to the State, this result is required under a plain reading of the statutes and under the Wisconsin Constitution. We again disagree.

20

¶37 Under Wis. Stat. § 17.07(3), "[s]tate officers serving in an office that is filled by appointment of the governor for a fixed term by and with the advice and consent of the senate . . . [may be removed] by the governor at any time, for cause." Members of the DNR Board must be nominated by the Governor and confirmed by the senate; they serve fixed terms. Wis. Stat. §§ 15.07(1)(a), 15.34(1) & (2)(a). By the plain text of § 17.07(3), DNR Board members who have undergone this appointment process are entitled to for cause protections.

¶38 As alleged in the complaint, Prehn was lawfully nominated by the Governor and confirmed by the senate in 2015 to a fixed, six-year term. DeBruin, 343 Wis. 2d 83, ¶11. As a member of the DNR Board, he is therefore entitled to for cause protection. He still lawfully occupies the office of DNR Board member, despite the fact that his term has expired; because there is no vacancy in his position, he cannot be replaced by provisional appointment. Thompson, 22 Wis. 2d at 293; 63C Am. Jur. 2d Public Officers and Employees, supra ¶28; 67 C.J.S. Officers, supra ¶28; Wis. Stat. §§ 17.03, 17.20(2)(a). Therefore, Prehn under Wis. Stat. § 17.07(3) is a "[s]tate officer" who currently "serv[es] in an office that is filled by appointment of the governor for a fixed term by and with the advice and consent of the senate." As a holdover, he still may be removed only "for cause." § 17.07(3).

¶39 This is in line with the common law principle that public officers have the same rights and responsibilities when they are lawful holdovers as they do when they hold office prior

21

to expiration of their terms. 63C Am. Jur. 2d Public Officers and Employees, supra ¶28, § 149 ("A holdover officer has all the authority to act in that capacity and receive compensation" and also "continues as the incumbent of the office"); 67 C.J.S. Officers, supra ¶28, § 155 ("[T]he period of . . . holding over is as much a part of [the incumbent's] tenure of office as the regular period fixed by law" and "[t]he office is held by the same title and by as high and lawful a tenure after the prescribed term . . . as before and during such term").

¶40 Our plain reading of Wis. Stat. § 17.07(3) is also supported by our decision in Moses v. Bd. of Veterans Affairs, 80 Wis. 2d 411, 259 N.W.2d 102 (1977). In that case, an officer was nominated by the Governor and confirmed by the senate to serve as the Secretary of Veterans Affairs as required by statute. Id. at 415. After the secretary was appointed, the Legislature amended the governing statute to make appointments to the position of secretary the decision of the Board of Veterans Affairs alone. Id. Under Wis. Stat. § 17.07, after the amendment of the statute, secretaries of Veterans Affairs could be removed at the pleasure of the Board of Veterans Affairs. Id. The board argued that they could therefore remove the officer who currently held the position without cause. The Wisconsin Supreme Court disagreed. Id. at 415-16. The court explained that § 17.07 describes for cause protections in terms of the individual "officer" who is subject to appointment. Id. at 416-17. Even though under existing statutes the Secretary of Veterans Affairs could be appointed only by the board, the

22

current officeholder had already undergone nomination and senate confirmation and lawfully held office. Id. Thus, under § 17.07, the officeholder was subject to for cause protections. Id. As we explained, "[a]s long as [the current Secretary of Veterans Affairs] remains an officer appointed by the governor, confirmed by the senate, he remains removable from office only by the governor, for cause." Id. at 416.

¶41 Moses' understanding of Wis. Stat. § 17.07 is readily applicable here. Prehn was an "officer" who, to hold appointed office on the DNR Board, was nominated by the Governor and confirmed by the senate. Moses, 80 Wis. 2d at 416-17 (quoting Wis. Stat. § 17.07 (1977-78). He remains in this position as a lawful holdover. Thompson, 22 Wis. 2d at 293; 63C Am. Jur. 2d Public Officers and Employees, supra ¶28; 67 C.J.S. Officers, supra ¶28; Wis. Stat. §§ 17.03, 17.20(2)(a). As an officeholder who underwent confirmation procedures, while Prehn remains on the DNR Board he can be removed by the Governor only for cause. § 17.07(3).

¶42 The State argues that Wis. Stat. § 17.07 must be read to permit Prehn's removal at the Governor's pleasure because, if Prehn has for cause protection, the statute would violate the separation of powers under the Wisconsin Constitution. According to the State, providing Prehn for cause protection would improperly limit the ability of the Governor to select a DNR Board member who has similar views on policy. The State argues this would prevent the Governor from "control[ling] the execution of the law" as required by the Wisconsin Constitution.

23

¶43 In making this argument, the State predominantly cites federal caselaw on the removal power of the United States President.  See, e.g., Seila Law LLC v. Consumer Fin. Prot. Bureau, 591 U.S. ___, 140 S. Ct. 2183 (2020); Myers v. United States, 272 U.S. 52 (1926); Morrison v. Olson, 487 U.S. 654 (1988); Humphrey's Ex'r v. United States, 295 U.S. 602 (1935). While these cases may be foundational to properly understanding the President's authority to remove federal officials in the executive branch, they lend only limited support to structure, meaning, and original understanding of the Wisconsin Governor's removal power.

¶44 To properly confirm the meaning of the Wisconsin Constitution, we consult "historical evidence" such as "the practices at the time the constitution was adopted, debates over adoption of a given provision, and early legislative interpretation as evidenced by the first laws passed following the adoption."  Halverson, 395 Wis. 2d 385, ¶22; see, e.g., Koschkee v. Taylor, 2019 WI 76, ¶¶22-32, 387 Wis. 2d 552, 929 N.W.2d 600 (providing analysis on the history and meaning of the Wisconsin Constitution's provision on the authority of the Superintendent of Public Instruction); Johnson v. Wis. Elections Comm'n, 399 Wis. 2d 623, ¶¶28-33 (analyzing the meaning of the apportionment clause in the Wisconsin Constitution for legislative districts).  But the State here presents no historical research or explanation to allow us to fully interpret the Wisconsin Constitution and its original meaning. Given that the State is arguing that Wis. Stat. § 17.07, as

24

plainly read, would be unconstitutional, this lack of fully developed argument is fatal to the State's position. See Soc'y Ins. v. LIRC, 2010 WI 68, ¶27, 326 Wis. 2d 444, 786 N.W.2d 385 ("The challenger [in a constitutional claim] has the burden of proof."); Mayo v. Wis. Injured Patients and Fams. Comp. Fund, 2018 WI 78, ¶25, 383 Wis. 2d 1, 914 N.W.2d 678 ("[W]e presume that . . . statute[s] [are] constitutional."); Halverson, 395 Wis. 2d 385, ¶26 (rejecting a challenge to the admission of evidence made by a criminal defendant who argued for the application prophylactic right under the Wisconsin Constitution, explaining that the defendant "provide[d] no textual or historical basis" for his challenge); Serv. Employees Int'l Union Local 1 v. Vos, 2020 WI 67, ¶73, 393 Wis. 2d 38, 946 N.W.2d 35 (explaining that our analysis under the Wisconsin Constitution was limited to the "claim[s] developed before us"). We have no obligation to "develop or construct arguments for parties" or construct a historical record in support of the State's constitutional claim. Id., ¶24.

¶45 The lack of a complete historical record is significant here because, from the court's independent research, it appears that the power of the Wisconsin Governor to control the occupancy of public offices within administrative agencies is far less robust than that of the United States President.

¶46 The Wisconsin Constitution, adopted in 1848, divides government power "into three separate branches, each 'vested' with a specific core government power." Id., ¶31 (citing Gabler v. Crime Victims Rights Bd., 2017 WI 67, ¶11, 376 Wis. 2d 147,

25

897 N.W.2d 384); see also Wis. Const. art. IV, § 1 ("The legislative power shall be vested in a senate and assembly."); id., art. V, § 1 ("The executive power shall be vested in a governor."); id., art. VII, § 2 ("The judicial power of this state shall be vested in a unified court system."). "To exercise this vested power, the legislature is tasked with the enactment of laws; the governor is instructed to 'take care that the laws be faithfully executed'; and courts are empowered to adjudicate civil and criminal disputes pursuant to the law." Vos, 393 Wis. 2d 38, ¶31 (citing Wis. Const. art. IV, § 17; id., art. V, § 4; id., art VII, §§ 3, 5, 8, 14).

¶47 "A separation-of-powers analysis ordinarily begins by determining if the power in question is core or shared." Vos, 393 Wis. 2d 38, ¶35. Core powers are those given by the constitution to a single branch, such that "no other branch may take" up those powers and "use [them] as [their] own." Id. (quoting another source). Shared powers, meanwhile, "lie at the intersections of these exclusive core constitutional powers." State v. Horn, 226 Wis. 2d 637, 643, 594 N.W.2d 772 (1999). "The branches may exercise power within these borderlands but no branch may unduly burden or substantially interfere with another branch." Id. at 644.

¶48 Wisconsin's constitution, and the separation of powers principles embodied in it, was the product of constitutional conventions in 1846 and 1848. Ray A. Brown, The Making of the Wisconsin Constitution (Part I), 1949 Wis. L. Rev. 648, 655 n.* (1949) (noting that although the constitution framed by the 1846

26

convention was ultimately rejected, the "essential details of the 1848 constitution followed closely the rejected predecessor" and that the 1846 convention brought "sharply into focus the vital political, economic and social issues of the period"). The records from both conventions reveal that the authority to appoint those whom the Governor supported was limited under the Wisconsin Constitution. With respect to the 1846 convention, it has been noted:

> The governor was to be elected for a two-year term and was given a comparatively small salary. He was given a veto, which could only be overridden by a two-thirds vote by each chamber of the legislature, but otherwise his powers were quite limited. In particular, he was given no appointive powers: convention delegates made it clear they did not want the governor to exercise extensive patronage.

Joseph A. Ranney, Trusting Nothing to Providence: A History of Wisconsin's Legal System 51 (1999) (emphasis added). Similarly, at the 1848 convention, "it seemed to be assumed by the delegates that the governor would have no appointive power." Ray A. Brown, The Making of the Wisconsin Constitution (Part II), 1952 Wis. L. Rev. 23, 34 (1952). But see id. at 34 n.34 (noting that the legislature nevertheless could "confer the appointive power on the governor").

¶49 Consistent with the understanding our constitutional framers had in mind, the first compilation of the Wisconsin Statutes assigned the Governor only modest responsibilities to control who held public offices. For example, the Governor could appoint individuals to fill certain positions that were

27

administrative in nature.  See § 57, ch. 9, Laws of 1849 (notaries public); § 2, ch. 23, Laws of 1849 (state librarian); § 1, ch. 61, Laws of 1849 (out-of-state land commissioners); § 1, ch. 143, Laws of 1849 (out-of-state agents to demand fugitives from other jurisdictions); § 2, ch. 156, Laws of 1849 (state printer).  In addition, the Governor was assigned responsibility to fill vacancies in various offices.  See § 11, ch. 11, Laws of 1849 (vacant statewide offices); § 13, ch. 11, Laws of 1849 (vacant local officers); § 5, ch. 18, Laws of 1849 (vacant positions on the board of regents).  These statutes, enacted immediately after the 1848 constitution was ratified, reveal a circumscribed understanding of the Governor's appointment power.

¶50 In contrast, the understanding of the Wisconsin Constitution that prevailed at the time of its ratification contemplated a strong role for the Legislature in appointment decisions.  Turning again to Wisconsin's first statutory compilation following ratification, we see both close legislative scrutiny of appointments made by the Governor and direct legislative appointments.  First, although the Governor could remove certain officers for cause during a recess of the Legislature, his power to fill the resulting vacancy was subject to close legislative review:

> All officers . . . who are or shall be appointed by
> the governor, by and with the advice and consent of
> the senate . . . may, for official misconduct, or
> habitual or willful neglect of duty, be removed by the
> governor upon satisfactory proofs, at any time during
> the recess of the legislature, and the vacancy filed

> by appointment made by him, until such vacancy shall be regularly supplied; but no such appointment shall extend beyond twenty days after the commencement of the next meeting of the legislature.

§ 8, ch. 11, Laws of 1849. Thus, dating back to the founding of our state, the Governor has never had expansive ability to control who held public offices in administrative agencies. The powers of removal and appointment were limited.

¶51 Further, we see that the Legislature itself exercised the appointment power at the State's founding. Under the 1849 statutes, the board of regents governing the University of Wisconsin did not consist of members appointed by the Governor as it does today. Compare Wis. Stat. §§ 15.07(1)(a) & 15.91 with § 4, ch. 18, Laws of 1849. Instead, its members were "elected by the senate and the assembly" to six-year terms. § 4, ch. 18, Laws of 1849. This reveals that the Governor was never understood to wield an exclusive power over the appointment and selection of administrative offices. To the contrary, the Legislature retained a strong hand in most appointment decisions, both by overseeing the Governor's use of his limited appointment power and by making appointments itself.

¶52 Under this record, the restriction of the Governor's removal power for DNR Board members does not present constitutional concerns. Reviewing the structure of the DNR, the Governor is not completely excluded from exercising control

29

over the makeup of DNR public officials.[4] The DNR Secretary must be nominated by the Governor and confirmed by the senate, but unlike the Board, the Secretary "serve[s] at the pleasure of the governor." Wis. Stat. § 15.05(1)(c). By statute, the Secretary wields "[a]ll of the administrative powers and duties of the department." § 15.05(1)(b). Further, the Secretary "promulgate[s] rules for administering the department and performing the duties assigned to the department" with "the approval of the board." Id. The Secretary, over whom the Governor has direct control, exercises aspects of executive power. See Koschkee, 387 Wis. 2d 552, ¶28 (describing administrative roles such as "the oversight and charge of something with the power of direction" as "executive . . . in nature"); Horn, 226 Wis. 2d at 650 (reasoning that the "administrative process . . . directed to the correctional and rehabilitative processes of the parole and probation system" was vested in the executive branch); Vos, 393 Wis. 2d 38, ¶¶59-60 (explaining that the administration of offices such as "coroners, registers of deeds, district attorneys, [and] sheriffs" were "executive functions").

¶53 The DNR Board is tasked with "regulatory, advisory and policy-making," "not administrative," responsibilities. Wis. Stat § 15.05(1)(b). Although more circumscribed than the

---

[4] We do not hold that the Governor must exercise control over the makeup of DNR administrative positions under the Wisconsin Constitution. Even if that were required under the Wisconsin Constitution, the structure of the DNR provides the Governor control and influence in the makeup of DNR offices.

30

Governor's control over the Secretary, the Governor still retains influence over the makeup of the DNR Board. See Vos, 393 Wis. 2d 38, ¶60 ("[A]dministrative agencies are considered part of the executive branch." (quoting Koschkee, 387 Wis. 2d 552, ¶14)). As previously explained, the Governor may nominate a replacement to DNR Board members once their terms expire. Subject to the advice and consent of the senate, the Governor has ability to select who holds office on the DNR Board for six-year terms. Wis. Stat. §§ 15.07(1)(a), 15.34(1) & (2)(a). The people's elected representatives in the senate may accept or reject the Governor's nominees, but the Governor undoubtedly has wide discretion in whom he chooses for nomination. See Jensen v. Wis. Elections Bd., 2002 WI 13, ¶10, 249 Wis. 2d 706, 639 N.W.2d 537 (explaining the Legislature is tasked to perform constitutional responsibilities as "representatives elected by the people to make . . . political and policy decisions"). As has been true since the enactment of the Wisconsin Constitution, the Governor may of course work with the senate to obtain a mutually satisfactory outcome on appointments and selections for administrative offices. As explained above, at the time the Wisconsin Constitution was enacted, it appears that the Governor's authority to control the occupancy of public offices was narrowly limited; the Governor, for instance, had no inherent appointment power.

¶54 Furthermore, although the Governor does not have a free hand to control who sits on the DNR Board, the Governor has authority to remove DNR Board members "for cause" while they

31

serve in office. Wis. Stat. §§ 15.07(1)(a), 15.34(1), 17.07(3). Whenever there is a vacancy on the DNR Board, the Governor may make a provisional appointment, who exercises all the authority of a DNR Board member "until acted upon by the senate." Wis. Stat. § 17.20(2)(a). Public offices with different responsibilities, operating in agencies with different structures, may present constitutional issues or concerns not present in the present suit. Nonetheless, with the available record and the lack of developed argumentation on the part of the State, we cannot conclude that for cause protections for DNR Board members violate the Wisconsin Constitution.

¶55 While "[w]e must be assiduous in patrolling the borders between the branches," based on the available record we have before us, we cannot conclude that providing Prehn for cause protection so offends the separation of powers that he must as a matter of law be removable at the Governor's pleasure. Tetra Tech EC, Inc. v. DOR, 2018 WI 75, ¶45, 382 Wis. 2d 496, 914 N.W.2d 21 (lead op.). Without any showing that Wis. Stat. § 17.07 violates the Wisconsin Constitution, we must follow the statute's plain language. Until his successor is nominated and confirmed by the senate, Prehn may be removed only for cause. Neither the quo warranto nor declaratory relief requested by the State is warranted.

## IV. CONCLUSION

¶56 We affirm the decision of the circuit court. Under Wis. Stat. § 17.03, the expiration of Prehn's term on the DNR Board does not create a vacancy. Prehn lawfully retains his

32

position on the DNR Board as a holdover. Therefore, the Governor cannot make a provisional appointment to replace Prehn under Wis. Stat. § 17.20(2)(a). Until his successor is nominated by the Governor and confirmed by the senate, under Wis. Stat. § 17.07(3), Prehn may be removed by the Governor only for cause. This arrangement complies with the plain language of Wisconsin Statutes and does not raise constitutional concerns. The State's complaint is dismissed with prejudice.

*By the Court.*—The judgment and the order of the circuit court are affirmed.

¶57 REBECCA FRANK DALLET, J. *(dissenting).* Imagine that, in 2015, you hired someone for a position that, by law, was for a "6-year term[]" that "shall expire on May 1 . . . in an odd-numbered year." See Wis. Stat. §§ 15.34(2)(a), 15.07(1)(c). Imagine also that you promised your new employee that, while they were "serving in [that] office" you wouldn't fire them except "for cause." See Wis. Stat. § 17.07(3). If you were asked when that position would be vacant so that you could hire someone else, you'd say "May 1, 2021," right? "Wrong," says the majority. In its view, that position isn't vacant until your employee decides to leave. Oh, and they still can't be fired without cause either, even after their term has expired.

¶58 The majority's absurd holding allows Prehn's six-year term on the Board of Natural Resources——which expired over a year ago——to last for as long as Prehn wants it to, so long as he refuses to leave and the senate doesn't confirm a successor nominated by the governor. And even though his term is long expired, the governor can't remove him except for cause. The majority bases these nonsensical conclusions on its misguided reading of a handful of statutes and a common-law doctrine meant to avoid the "disorder and inconvenience" that would result if incumbents were unable to continue holding office after their terms expired but before a successor was in place. See State ex rel. Martin v. Heil, 242 Wis. 41, 49, 7 N.W.2d 375 (1942). The majority's decision, however, steers our state's government directly into disorder and chaos, threatening the fragile

1

separation of powers central to its functions. I therefore dissent.

I

¶59 The Board of Natural Resources, which "direct[s] and supervis[es]" the Department of Natural Resources, is made up of seven members appointed to "staggered 6-year terms." Wis. Stat. § 15.34(2)(a). The legislature specified that those six-year fixed terms "shall expire on May 1" and "in an odd-numbered year." § 15.07(1)(c). The Board's members are nominated by the governor and officially appointed to their position on "the advice and consent of the senate." Wis. Stat. § 15.07(1)(a).

¶60 Although positions on the Board are typically filled through that nomination-and-appointment process, the governor alone can fill a vacancy on the Board for the "residue of [an] unexpired term" through a provisional appointment. See Wis. Stat. § 17.20(2)(a). Such provisional appointments "shall be in full force until acted upon by the senate" and entitle the appointee to exercise all the powers of the office "during the time in which the appointee qualifies." Id. To "qualif[y]" in this context, an appointee need only "file[] the required oath of office." § 17.01(13).

¶61 Turning to this case, the majority concludes that Prehn's office is not vacant even though his six-year term indisputably expired on May 1, 2021. As a result, the majority holds that the governor may not provisionally appoint a replacement for Prehn, for two reasons. First, the majority points to the "well established" common law rule "that appointed

2

officers can lawfully holdover after the expiration of their term until a successor is properly appointed to the position." Majority op, ¶28. And second, it reasons that the "carefully defined vacancy rules" in Wis. Stat. § 17.03 make clear that the expiration of a fixed term in appointed office does not create a vacancy. See id., ¶¶19-20. Neither of these reasons supports the majority's conclusion.

¶62 Although the majority reaches the wrong conclusion, its common-law starting point is correct. The longstanding common law rule in Wisconsin and elsewhere is that, absent a provision otherwise, an officeholder may continue serving beyond the expiration of their term until a successor is appointed and qualified. See State ex rel. Pluntz v. Johnson, 176 Wis. 107, 114, 186 N.W. 729 (1922); see also State ex rel. Thompson v. Gibson, 22 Wis. 2d 275, 283-84, 125 N.W.2d 636 (1964). The courts adopted this rule to avoid the "disorder and inconvenience" that might result if officials were required to leave their office immediately at the expiration of their term even if no one was ready to replace them. See Heil, 242 Wis. at 49. These concerns were particularly serious before the advent of modern communication, when news of a vacancy could take a long time to pass along, and when the legislature was rarely in session, thus slowing the confirmation of gubernatorial appointees. For those reasons, it's unsurprising that many of our cases involving holdover officials were decided in the late 1800s and early 1900s. See, e.g., State ex rel. Finch v.

3

_Washburn_, 17 Wis. 658 (1864); _State ex rel. Guernsey v. Meilike_, 81 Wis. 574, 51 N.W. 875 (1892).

¶63 Today, however, those concerns are at play rarely, if ever, and particularly not in a situation like Prehn's. Prior to Prehn's term expiring in May 2021, the governor had appointed a successor, who also filed the oath of office, thus qualifying her for the position. See Wis. Stat. §§ 17.01(13), 17.20(2)(a). Thus, there would be no disruption to the work of DNR or the Board if Prehn were removed from office tomorrow. And despite having numerous opportunities over more than a year to confirm or reject the governor's nominee, the senate has refused even to act on that nomination. Meanwhile, allowing Prehn to continue serving in office indefinitely makes him the final authority on whether he remains in office——not the legislature, which specified by statute that his term expired over 13 months ago, and not the governor, who the legislature gave the authority to nominate a replacement. One unelected official should not be able to dictate his term in office over the will of the people's elected representatives.

¶64 Fortunately, that is not the law. Although Prehn may hold over after his term expires to avoid a temporary disruption to the Board's work, his office is vacant upon the expiration of his term. That is because not all holdover officials are the same, at least when it comes to whether holding over creates a vacancy. We have distinguished between two types of holdover officers: de jure and de facto. See _Thompson_, 22 Wis. 2d at 294. A de jure officer is one may continue serving in office

4

after their term expires under "an express statutory provision for holding over after expiration of an appointive term." Id. Our statutes contain a number of such provisions, including those applicable to members of the council on recycling, local election officials, first-class city fire and police commissioners, and local weed commissioners. See Wis. Stat. §§ 15.347(17)(c), 7.30(6)(a), 62.50(1h), 66.0517(2)(a). All of these officials have statutory authority to remain in office past the expiration of their term until a successor is appointed and qualified to replace them. See, e.g., § 66.0517(2)(a). Thus, their office is not vacant if they so hold over. See Thompson, 22 Wis. 2d at 294 (holding that both nomination by the governor and senate confirmation are necessary to replace a de jure officer).

¶65 A de facto officer, on the other hand, is an officer who holds over after the expiration of their term without the explicit statutory authority to do so. See id. In that case, although there is technically someone in the office, and they may legally discharge that office's duties, the office is vacant for appointment purposes and can be filled by a valid appointment. See, e.g., Romanoff v. State Comm'n on Jud. Performance, 126 P.3d 182, 191 (Colo. 2006) (explaining that a de facto officer may serve in the office only until the office is filled by appointment); Bradford v. Byrnes, 70 S.E.2d 228, 231 (S.C. 1952); State ex rel. Ryan v. Bailey, 48 A.2d 229, 231-32 (Conn. 1946); see also 67 C.J.S. Officers § 154 (explaining that officers holding over without express statutory

5

authorization "are generally regarded as de facto officers and cannot be punished as intruders; but their temporary occupation of office does not prevent the existence of a vacancy and the filling of the office by the duly empowered authority").

¶66 Prehn is a de facto officer whose authority to serve in office ended when the governor appointed Prehn's successor after the expiration of his term. That is because he was appointed to a fixed, six-year term on the Natural Resources Board, and nothing in the statutes creating that position expressly authorizes him to hold over until a successor is appointed and qualified. See §§ 15.34(2)(a), 15.07(1)(a)-(c). Prehn is therefore differently situated from de jure officers, such as the local weed commissioners, all of whom have explicit statutory authorization to remain in office until a successor is appointed and qualified. See § 66.0517(2)(a). And as a result, Prehn's office is vacant for appointment purposes even though he continues to occupy it as a holdover.

¶67 The relevant statutes support that conclusion. The vacancy statutes originate from Article XIII, Section 10(1) of the Wisconsin Constitution, which provides that "[t]he legislature may declare the cases in which any office shall be deemed vacant . . . where no provision is made for that purpose in this constitution." Since statehood, the legislature has specified by statute at least some situations in which an appointed office is vacant. For example, Wis. Stat. ch. 11, § 2 (1849) stated that "[e]very office shall become vacant on the happening of . . . the following events before the expiration of

6

a term," and listed several such events including resignation, removal from office, or conviction of certain crimes. Today's vacancies statute, § 17.03, is a direct descendant of that early statute, and states that "[e]xcept as otherwise provided, a public office is vacant when," for instance, an incumbent resigns, is removed, is convicted of certain crimes, or "[a]ny other event occurs which is declared by any special provision of law to create a vacancy." See § 17.03(2)- (3), (5), (13).

¶68 Although § 17.03 does not explicitly list the expiration of a fixed term as an instance in which an office is vacant, that event fits within the statute reference to vacancies that are "otherwise provided" for. Indeed, the only reasonable interpretation of what it means for a person's term to "expire" is that it marks the last date on which the person has the statutory authority to continue serving in that position. See State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (we give statutory language its "common, ordinary, and accepted meaning"). When, under a statute of limitations, the time to bring a cause of action "expires," that's the end of it; a party cannot initiate a claim after that date. So too for appointees who lack explicit statutory authorization to hold over. The expiration of their term in office necessarily creates a vacancy in that office.

¶69 That conclusion is at odds with our decision in Thompson, and to that extent, Thompson should be overruled. There, we held that an office is not vacant when it is occupied

7

by a holdover official, even if that official lacks statutory authority to hold over. See Thompson, 22 Wis. 2d at 293-94. Thompson, however, did so based on its incorrect assumption that the vacancies statute, § 17.20 (1963-64), exhaustively identified all situations in which a vacancy existed. See id. at 293. As explained above, however, events not enumerated in the vacancies statute can (and indeed must) create vacancies. Moreover, although Thompson acknowledged the existence of de facto and de jure officers, it failed to recognize the importance of that distinction on the existence of a vacancy. Id. at 293-94. In these respects, Thompson is "detrimental to coherence and consistency in the law," "unsound in principle," and "unworkable in practice," and should be overruled. See State v. Roberson, 2019 WI 102, ¶50, 389 Wis. 2d 190, 935 N.W.2d 813 (identifying the grounds for overruling a prior decision).

¶70 Setting aside those reasons for why Thompson should be overruled, it is distinguishable in all other respects because it addressed a fundamentally different appointments system than exists today. See State ex rel. DNR v. Wis. Ct. of Appeals, Dist. IV, 2018 WI 25, ¶38 n.16, 380 Wis. 2d 354, 909 N.W.2d 114 ("[W]hen the legislature changes the structure of a statute, we must construe it anew."). When Thompson was decided, the governor could make provisional appointments only when the legislature was in recess or out of session, but could do so even in the absence of a vacancy. See Wis. Stat. § 14.22 (1963-64). That meant that if the governor wanted to replace a

8

holdover official and the senate refused to act on the nomination, the governor could simply wait for a recess and then make an appointment. Today, however, the governor may make provisional appointments at any time, but only to fill vacancies. See § 17.20(2)(a). Importing Thompson's interpretation of outdated vacancy and appointment statutes into the current statutory context, as the majority does, produces results that Thompson could not have anticipated and that are at odds with the legislature's subsequent changes to the appointments system. See Wis. Legis. Ref. Bureau, LRB-9627 (explaining that 1977 Wis. Laws ch. 418 was meant to "extend[] the power of the governor to make provisional appointments under the same circumstances" permitted under the prior law and "regardless of whether the legislature is in recess," "[u]nless the appointee is to replace an official who has not resigned and is serving for a fixed term which has not yet expired." (emphasis added)). Namely, it transforms a statutory change meant to expand the governor's power to make provisional appointments into one that grants appointees like Prehn the power both to hold office indefinitely in spite of the expiration of their term and to prevent provisional appointees from taking office. Given the changes to the statutory structure, Thompson has little, if anything, to say about this case.

¶71 The majority's contrary reasoning, based in large part on Thompson, is also unpersuasive, mainly because it creates tension elsewhere in the appointments statutes. For example,

9

the majority does not explain why, if the expiration of the term doesn't cause a vacancy, the governor and the senate together could nevertheless replace Prehn. After all, if his office isn't vacant, then why can he be replaced by a new nominee confirmed by the senate? See 76 Wis. Op. Att'y Gen. 272, 273-74 (1987) (explaining that the governor and the legislature cannot fill vacancies that do not yet exist). Yet both the majority and all the parties seem to take it as a given that if the Senate confirmed the governor's nominee tomorrow, then she would immediately replace Prehn, even though there would be no statutory vacancy to fill.

¶72 Moreover, the majority's textual analysis is flawed, and, in at least one instance, is at odds with itself. For starters, the majority offers no reasonable interpretation of what § 15.07(1)(c) means by "fixed terms . . . shall expire on May 1 . . . [of] an odd-numbered year." Rather, it asserts that the expiration of a term means only that "the Governor now has the prerogative to appoint a successor who, if confirmed, may replace Prehn on the Board for a full appointed term." Majority op., ¶29. That is a bizarre way to read § 15.07(1)(c), which says nothing whatsoever about the powers of the governor or the senate. Next, the majority reasons that the expiration of Prehn's term doesn't create a vacancy because § 17.03(10) states that a vacancy in "elective" offices arises when "the incumbent's term expires." According to the majority, this provision would be "surplusage" if the expiration of a term——for elected or unelected offices——necessarily created a vacancy.

10

See majority op., ¶26. Maybe so, but the majority's contrary interpretation also creates surplusage by giving no meaning to the statutory provisions referenced above that give de jure officers like the local weed commissioner the explicit statutory authority to hold over after the expiration of their term. See, e.g., § 66.0517(2)(a). So there is "surplusage" either way, and the majority articulates no principled reason for choosing its interpretation over all others. Likewise, the majority's conclusion that Prehn may continue serving indefinitely after the expiration of his term gives no meaning to the statutory requirement that Board members serve "staggered" terms. § 15.34(2)(a). At this point, Prehn is seemingly not serving a term at all, let alone one that is "staggered" with the terms of the Board's other members. See id. Again, the majority fails to square that "staggered term" language with its interpretation.

¶73 Luckily, our precedents offer a solution, mandating that we choose an interpretation that most closely adheres to the statute's text, context, and purpose. See, e.g., Kalal, 271 Wis. 2d 633, ¶46. And for those reasons, we must conclude that a vacancy arose in Prehn's office when his term expired in May 2021. That is the only way to make sense of the competing statutory provisions at play. Because Prehn's office was vacant, the governor had the power to fill it "at any time" by provisional appointment, see § 17.20(2)(a), with a nominee who qualified for office by filing the statutorily required oath.

11

The governor and his appointee did so as of May 1, 2021, and as a result, Prehn ceased lawfully serving on that date.

II

¶74 Even if Prehn's office is not vacant, however, there is another reason why he cannot remain in office: He is no longer entitled to the for-cause removal protection that applies to Board members during their terms in office.

¶75 Wisconsin Stat. § 17.07 provides specific rules governing the removal from office of state officers. The statute generally distinguishes among various state offices according to how they are filled. See, e.g., § 17.07(1)-(5). In the case of "[s]tate officers serving in an office that is filled by appointment of the governor for a fixed term by and with the advice and consent of the senate," like members of the DNR Board, they may be removed from office "by the governor at any time, for cause." § 17.07(3). When a statute provides protection from removal except for cause, "'cause' means inefficiency, neglect of duty, official misconduct, or malfeasance in office." Wis. Stat. § 17.001. Aside from the narrow categories of officers granted for-cause removal protections, all other state officers serve at the pleasure of either the governor or the other officer or body that appointed them. See, e.g., § 17.07(3m)-(6).

¶76 During Prehn's six-year term, he indisputably fell within the category of officers with for-cause removal protection under § 17.07(3). He was a "[s]tate officer[] serving in an office that [was] filled by appointment of the

12

governor for a fixed term by and with the advice and consent of the senate." See id. The question is whether that protection continues now that he is holding over after the expiration of his term in office.

¶77 The majority concludes that it does because Prehn "still lawfully occupies the office of DNR Board member, despite the fact that his term has expired," and he therefore "'serv[es] in an office that is filled by appointment of the governor for a fixed term by and with the advice and consent of the senate.'" See majority op., ¶38 (alteration in original) (quoting § 17.07(3)). As a result, the majority holds that "while [Prehn] remains on the DNR Board," even as a holdover, "he can be removed by the Governor only for cause." See id., ¶41.

¶78 What the majority overlooks, however, is that the statute limits for-cause removal protection to the Board members' fixed terms. Section 17.07(3) provides for-cause removal protection to those "serving in an office that is filled by appointment . . . for a fixed term." See § 17.07(3) (emphasis added). The use of the present tense in § 17.07(3) makes clear that for-cause removal protection applies only while the officeholder is serving the fixed term to which he was appointed. So even though Prehn was once serving such a fixed term, during which he had for-cause protection, he isn't anymore——that term expired more than a year ago. Now he is serving in an office filled by a holdover appointee for a

13

seemingly indefinite term. And for that reason, he falls outside the for-cause removal protections granted by § 17.03(3).[1]

¶79 This conclusion is supported by the broader structure of the removal statutes, is confirmed by the legislative history, and avoids possible constitutional problems. To begin with, the majority's incomplete and consequences-be-damned interpretation of the removal statutes effectively grants Prehn life tenure. If the only way Prehn can be removed from office is for cause by the governor, then the majority does not explain why he can be replaced even if the senate confirms the governor's nominee for Prehn's office. See majority op., ¶38. After all, the majority's logic is that Prehn "lawfully occupies the office of DNR Board member" and thus, "[a]s a holdover, he still may be removed only 'for cause.'" See id. (quoting § 17.07(3)). This cannot be right, if for no other reason than it leads to the absurd result that Prehn's expired six-year term has somehow transformed into life tenure with for-cause removal protection. See Kalal, 271 Wis. 2d 633, ¶46 (we interpret statutes "reasonably, to avoid absurd or unreasonable results").

---

[1] The majority's citation to Moses v. Board of Veterans Affairs, 80 Wis. 2d 411, 259 N.W.2d 102 (1977) is not to the contrary. In that case, we held that when the law governing who appointed the Secretary of Veterans Affairs changed while an incumbent was in office, the incumbent was entitled to the prior law's removal procedures so long as he remained in office. Id. at 417. Moses did not address whether for-cause removal protections extend beyond the expiration of an incumbent's term——indeed, the Secretary of Veterans Affairs served an indefinite term. See Wis. Stat. § 15.05(1)(b) (1975-76). Thus, Moses does not help answer the particular removal question raised in this case.

14

¶80 By contrast, interpreting for-cause removal to expire when a fixed term expires avoids that absurd result, and is consistent with the legislative evidence. When the phrase "fixed term" was added to § 17.07(3) in 1980, the explanatory notes stated that the change was to be read "in accordance with the presently accepted understanding," which provided that "appointees who serve for a fixed term and whose appointments require senate confirmation may not be removed by the governor in mid-term unless a showing of cause is made." Dep't of Admin., Explanatory Notes for Statutory Changes Appearing in the 1980 Annual Review Bill, App'x to 1980 Assembly Bill 1180 (emphasis added). This explanation of the 1980 amendment confirms that Prehn's for-cause removal protection ended when his fixed term expired in May 2021. That conclusion also avoids the potential separation-of-powers issues that could arise if the governor's inability to remove Prehn prevents the governor from exercising his powers over the executive branch, including DNR.[2] See, e.g., Serv. Emps. Int'l Union, Local 1 v. Vos, 2020

---

[2] The majority concludes that, based on its "independent research, it appears that the power of the Wisconsin Governor to control the occupancy of public offices within administrative agencies is far less robust than that of the United States President." Majority op., ¶45. Perhaps that was true in the State's early days, when the governor could appoint only a handful of state officials and had little or no power to remove them. See id., ¶¶49-50. But I question whether that remains true today, now that the legislature has granted the governor broad authority to make appointments without input from the legislature and to remove most state officials without cause. See, e.g., Wis. Stat. §§ 17.07(3m)-(6), 17.20(2)(a). In any event, because I conclude that the governor has the statutory authority to remove Prehn for any reason after the expiration of Prehn's fixed term, I do not address these constitutional questions further.

15

WI 67, ¶¶129-30, 393 Wis. 2d 38, 946 N.W.2d 35 (discussing the relationship between executive power and administrative agencies); see also Am. Fam. Mut. Ins. Co. v. DOR, 222 Wis. 2d 650, 667, 586 N.W.2d 872 (1998) (explaining that courts "should avoid interpreting a statute in such a way that would render it unconstitutional when a reasonable interpretation exists that would render the legislation constitutional.").

¶81 As a result, I conclude that for-cause removal protection for DNR Board members is limited to their fixed terms in office, and that holdover members like Prehn are therefore removable at will by the governor. Thus, even if Prehn's office is not vacant, the governor may remove him from office immediately.

¶82 I am authorized to state that Justices ANN WALSH BRADLEY and JILL J. KAROFSKY join this opinion.